ELIHU N. KLEINBAUM, Respondent, *v.* CLIFFORD L. MILLER, Appellant, Impleaded with CLIFFORD L. MILLER and JOHN P. CURRY, Copartners Trading as CLIFFORD L. MILLER & COMPANY, and WEST STOCKBRIDGE LIME COMPANY, Defendants.

First Department, July 14, 1922.

Contracts — action based on contract by plaintiff with defendant corporation by which plaintiff was to receive as salary percentage of profits of new department of corporation manufacturing magnesium chloride — appellant owned defendant corporation and defendant copartnership — calcium chloride purchased and sold by copartnership at profit — if calcium chloride was purchased for plaintiff's department he is entitled to share in net profits only arising from use of calcium chloride in his department — net profits not shown — appellant, defendant corporation, and defendant copartnership distinct — no recovery can be had against appellant, as corporation would not be liable to plaintiff.

The plaintiff entered into a contract with the defendant corporation whereby it was agreed that the defendant corporation should establish a new department in its business for the manufacture of magnesium chloride and allied chemicals, and that the plaintiff should act as manager thereof and receive as his salary, and not as representing an interest in the business, twenty-five per cent of the net profits of the department. Calcium chloride was a chemical necessary to be used in the manufacture of magnesium chloride. The plaintiff alleged that the defendant corporation purchased in the name of the defendant copartnership, which was owned principally by the appellant, a large quantity of calcium chloride for use in plaintiff's department; that thereafter he was wrongfully prevented from further performance of his contract with the corporation by the appellant who was the president of the corporation and the owner of substantially all of its stock; that after the alleged breach of the contract the appellant received the calcium chloride under the contract of purchase and disposed of it at a profit through the said copartnership, and that the plaintiff is entitled to twenty-five

per cent of the profits realized on the purchase and sale of the calcium chloride on the theory that it was purchased by the copartnership as agent for the corporation and for use in plaintiff's department.

*Held*, that, treating the entire contract for calcium chloride as one made for the benefit of the corporation and the department whereof plaintiff was manager, and granting that the appellant was acting as agent for the corporation in making the contract, the plaintiff would be entitled to share in the net profits on the transactions arising from the manufacture and sale of magnesium chloride by his department only as part of the compensation agreed to be paid him under his contract of hiring, and he would not be entitled to any share in the profits on the purchase and sale of the calcium chloride by the corporation as a separate and independent source of profit to him.

The plaintiff failed to prove that any net profits were ever earned by his department and he has, therefore, failed to prove that he was entitled to recover any sum whatever from the corporation under his contract.

Having failed to establish his right to recover against the corporation, his employer, he has no cause of action against the appellant, individually, based on his right to profits under his contract on the theory of unlawful interference with plaintiff's rights by the appellant with full knowledge of the contract with the corporation or on the theory that the appellant was acting as agent or trustee of the corporation and was unlawfully withholding moneys belonging to it in which the plaintiff was entitled to a share; the appellant can only be held liable if in fact the plaintiff was entitled to receive from the corporation moneys due him under his contract with it, or because of a breach thereof by it.

The appellant, although he dominated the corporation and the copartnership, cannot be held individually liable on the contract, for the appellant and the corporation and the copartnership were entirely distinct and the mere identity of interests is not sufficient to destroy all the attributes of the corporation's entity and to transfer corporate obligations to an individual who has never assumed them.

APPEAL by the defendant, Clifford L. Miller, from an interlocutory judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 11th day of March, 1921, upon the decision of the court rendered after a trial at the New York Special Term.

*Michael J. Sweeney* [*Charles H. Tuttle* of counsel], for the appellant.

*Karl Propper* of counsel [*I. Maurice Wormser* and *Ernest H. Wells* with him on the brief], for the respondent.

DOWLING, J.:

The cause of action set forth in the complaint herein is based upon an agreement in writing, bearing date December 2, 1915, between plaintiff and the West Stockbridge Lime Company, a Massachusetts corporation. By that agreement, a copy of which is annexed to the complaint, it appears that the company was desirous of installing a new department in its plant at West Stockbridge, Mass., for the purpose of conserving and utilizing the carbon dioxide gas then being made at its plant in the calcination of limestone, and of manufacturing certain chemicals from said

gas, principally magnesium chloride and allied chemicals, and that plaintiff had made a study of the processes of manufacturing magnesium chloride from such gas, and of the processes for obtaining, confining and conserving such gas to that end.

It was, therefore, agreed that the company would install and set up all necessary machinery and equipment for the manufacture of magnesium chloride and its allied chemicals, and would furnish all the necessary capital required to finance the operation and to build the plant and equipment. It was provided that such plant " shall be a separate department of the business of the party of the first part [the company] concerning the activities and business of which the party of the first part shall keep separate books of account and all necessary records, which shall at all times be accessible and open to the inspection and examination of the party of the second part [plaintiff] or his duly authorized agent or representative." The company then employed plaintiff " as manager of the manufacturing processes of the department and chemical engineer thereof," such employment to continue subject to the conditions thereinafter set forth.

The plaintiff agreed to give as much time to his duties as was necessary to their efficient performance, and to give all his skill, ability and endeavors to the interests of the department and to work for its best interest; he further agreed to submit for the consideration of the company any new chemical ideas, formulas, methods or inventions relating to the business of the department which he might originate; but in case they could not agree upon the terms upon which they should be taken over, they could be sold elsewhere. It was agreed that any article or by-products resulting from plaintiff's process of manufacturing magnesium chloride as practiced upon the installation of the department should become the property of the company, and if sold the profit derived therefrom was to be credited to and apportioned with the profits of said department.

It was further agreed:

" The party of the first part shall pay to the party of the second part as a salary for his services as manager as aforesaid, an amount which shall be equivalent to twenty-five (25) percent of the net profits of the department herein constituted, this salary being fixed on such profit-sharing basis solely for the purpose of arranging for its automatic increase with the growth of the business of said department and not for the purpose of giving the party of the second part an actual ownership interest in the business of the party of the first part; and it is further agreed by the party of the first part that the party of the second part shall be allowed a drawing

account of fifty dollars ($50.00) a week up to January 31st, 1916. If his drawing account for the six months following said date shall be a sum equivalent to a rate of three thousand dollars ($3,000) annually, or whenever thereafter it shall amount to said rate, he shall devote his entire time and attention to the business of this department and dispose of any other business in which he may be engaged.

" The party of the first part shall be privileged to appoint a representative to said department herein constituted who shall be paid by the party of the first part."

The company was to keep books and records exclusively of the department business, and an inventory and account of all profits and losses was to be taken every six months. The method of computation of the net profits was set forth in detail. Before any profits were apportioned and distributed, the department was to repay to the company all moneys advanced by it for the erection and installation of the department plant, and upon such repayment the plant was to be considered as a department asset. If the department profits should not amount for the first fiscal year to the sum of $5,000, or if after such year a fair test of at least six months should disclose that the profits could not be reasonably expected to reach that figure annually, the company had the option to abolish the department and terminate the agreement and all salaries and expenses thereunder, this being of the essence of the agreement. In such event, and in case the company wished to sell the plant, plaintiff had the first option of purchasing the same with gas service thereto at a fair appraised value less the undistributed net profits. In the event of such termination, and in case plaintiff declined to exercise his option to purchase, then in consideration in full for the services that plaintiff performed, an inventory and account of all profits and losses should be taken, and twenty-five per cent of the net profits should be paid to plaintiff, such payment not to be considered as an interest of plaintiff in the business of the department, but solely as a consideration for services performed.

It was further provided that, as an extra inducement to plaintiff and solely for the purpose of securing his best efforts, skill, time and attention to the business of the department, and not for the purpose of giving him or his estate any interest therein, the company agreed to the following extra stipulations, which the plaintiff accepted and ratified:

1. In case of the death of the plaintiff the company would allow the legal representative of his estate to appoint a competent

9

and acceptable man to take the place of said deceased, and so long as the service of such man was furnished by the decedent's estate, the latter should be entitled to receive a sum which should be equivalent to twenty-five per cent (25%) of the net profits of the department's business, the said estate to pay the salary of its appointee.

2. If the legal representative of the estate of the deceased should not desire or should be unable to select such man, then the former must immediately notify the company to that effect in writing.

3. Upon the receipt of said notice, the company, at its option, either:

(a) Pay to or deposit to the credit of said estate of the deceased a sum, the principal of which at six per cent (6%) interest would earn annually a sum equivalent to one-sixteenth (1/16) of the average net profits of said department. The said amount of said profits to be determined by appraisers acceptable to both parties to this agreement.

(b) Pay to or deposit to the credit of said estate of the deceased annually a sum which should be equivalent to one-sixteenth (1/16) of the net profits earned by said department, which net profits should be determined in the manner provided for in this agreement subject to a further deduction from gross profits of a reasonable salary for the services of a man to replace the deceased.

The complaint then sets forth that plaintiff entered upon the performance of the agreement and duly performed all the acts and duties imposed upon him thereby, and all the terms and conditions thereof on his part to be performed, until July 29, 1916, when he was wrongfully prevented from further performance thereof by defendant Miller, who was president of the company. Miller was at all times in question president of said company, the owner of substantially all its stock, the sole manager and director of its business, and personally managed and directed and controlled all the acts of the company complained of. Miller at the same time was one of the partners in the defendant firm of Clifford L. Miller & Company, and owned the majority interest therein and controlled the acts of the partnership. It is then alleged:

" *Ninth.* That after the making of the contract above referred to, and prior to the twenty-ninth day of July, 1916, the defendant corporation purchased from the Semet-Solvay Company a quantity of calcium chloride to be used by the department of the defendant corporation created by the contract above mentioned in Paragraph Sixth hereof; that the said calcium chloride was, by the terms of the purchase, to be delivered in installments and the contract for the purchase of said calcium chloride was made in the name

of Clifford L. Miller & Company on behalf of the West Stockbridge Lime Company.

" *Tenth.* That after the twenty-ninth day of July, 1916, the defendant, Miller, and the defendant Clifford L. Miller & Company received and continued to receive quantities of calcium chloride from the Semet-Solvay Company which the Semet-Solvay Company delivered on account of the contract for the purchase of the said material referred to in Paragraph Ninth, which they wrongfully converted to their own use and which the said Miller and the defendant partnership have disposed of, although the said calcium chloride was the property of the West Stockbridge Lime Company, and the defendants, Miller, and Clifford L. Miller & Company received sums of money therefor, far in excess of the cost thereof, which they wrongfully withheld and do continue wrongfully to withhold from the West Stockbridge Lime Company thereby preventing the West Stockbridge Company from paying to the plaintiff the sums rightfully due him."

It is further averred that plaintiff has no means of determining the amount which is due him upon the foregoing facts; that defendants Miller. and the copartnership have wrongfully acquired all the assets of the company, whose business is now being conducted by the copartnership; and that the plaintiff has been damaged thereby; and that such assets were acquired after the purchase of the calcium chloride from the Semet-Solvay Company. It is then set forth that plaintiff has no adequate remedy at law, and that he has demanded an accounting, which has been refused. The judgment demanded is that the defendants Miller and the copartnership be directed to account for the moneys received from the proceeds of the sale of calcium chloride delivered by the Semet-Solvay Company by reason of the contract for the purchase of said material made on behalf of the West Stockbridge Lime Company; and also that the said defendants, Miller and the copartnership, pay over to the plaintiff the moneys that shall be found due him, by reason of the matters herein alleged, upon said accounting.

The answer of the defendant Miller, save for an admission of the making of the agreement in question, and that defendant was at the time an officer and president of the company, denies practically every allegation of the complaint.

By the decision herein the learned trial court found that the agreement in question had been made on December 2, 1915, between plaintiff and the West Stockbridge Lime Company, a Massachusetts corporation, whereof, after August, 1915, the defendant copartnership, Clifford L. Miller & Company, composed of defendants

Miller and Curry, were the sole stockholders; that plaintiff entered upon the discharge of his duties under the contract and duly performed the same until July 29, 1916, when defendant Miller (who was at all the times in question president of the company and personally in entire charge and control of its business) wrongfully and in violation of the contract prevented plaintiff from continuing the performance of his obligations thereunder; and that at all the times in question defendant Miller personally and exclusively exercised the authority and rights of the copartnership, Clifford L. Miller & Company, as sole owners of the stock of the West Stockbridge Lime Company. It was further found that in furtherance of the contract in question defendant Miller in the name of Clifford L. Miller & Company, " but for the sole use and benefit of the enterprise created by the said contract " between plaintiff and the lime company, contracted for the purchase and delivery from the Semet-Solvay Company of 10,400 tons of calcium chloride under a written agreement dated February 15, 1916, which is set forth at length in the decision and which by its terms purports to be made between the Semet-Solvay Company and Clifford L. Miller & Company. Further that after the wrongful discontinuance of plaintiff's services, Miller " exclusively ordered shipments to be made of calcium chloride by the Semet-Solvay Company, pursuant to the said contract for the purchase thereof, to persons other than the West Stockbridge Lime Company, to whom he had sold or caused to be sold, the said calcium chloride; " that Miller sold the said calcium chloride at a profit and wrongfully retained the share of the net profits to which plaintiff was entitled under his contract, the amount of the net profits not being at the time of the trial ascertainable, but plaintiff being entitled to twenty-five per cent thereof; that the copartnership of Clifford L. Miller & Company acquired all the assets of the lime company during the year 1917; that the said copartnership was dissolved on or about January 1, 1919, and Miller acquired all the assets thereof; and that Miller has received all the proceeds of the sale of the said calcium chloride. It is further found that out of 8,533 tons of calcium chloride shipped and delivered under the contract, only 250 tons were permitted by Miller to be delivered to the department or enterprise created by the contract between plaintiff and the lime company, and the balance thereof was sold by Miller personally, who received the profits and has failed to account for, or pay to plaintiff, the twenty-five per cent thereof which he was entitled to receive. The learned trial court found as conclusions of law: (1) That by reason of the agreement in question, and by reason of the exclusive control, operation and domination of the lime company

by Miller, in the acts performed pursuant and subsequent to the making of the contract, plaintiff is entitled to receive twenty-five per cent of the net profits realized by Miller from the sale of the calcium chloride; (2) that Miller received the profits and retains them, notwithstanding plaintiff is entitled to twenty-five per cent thereof, the amount being unascertainable without an accounting; (3) that plaintiff is entitled to receive from Miller, within twenty days after the service of the interlocutory judgment, an account under oath of the sales of the calcium chloride, showing the sales made, the amounts received and the expenses incurred; (4) that a judgment be entered appointing a referee to pass on said account, and that plaintiff is entitled to receive a distributive share of twenty-five per cent of the net profits realized by defendants Miller and Clifford L. Miller & Company; (5) that judgment be entered in favor of plaintiff and against Miller in conformity to the decision.

The learned trial court in its oral opinion delivered at the close of the case, decided that plaintiff was entitled to a judgment for an accounting because the corporation, West Stockbridge Lime Company, and the copartnership, Clifford L. Miller & Company, were practically one and the same thing, because the men who controlled the one controlled the other, and Miller absolutely dominated the lime company. But reference was made to the undoubted fact that they were separate entities. The court indicated its disbelief of Miller's testimony that out of the 10,400 tons of calcium chloride purchased from the Semet-Solvay Company only 1,000 tons were to go to the lime company, and characterized it as a subterfuge to avoid liability, closing by saying that the equity in the case was with plaintiff.

It is quite true that there was a conflict of testimony as to whether the whole purchase of 10,400 tons of calcium chloride was intended for the operations of the lime company or not. There was testimony that it was an unusually large contract for any purchaser to make; that plaintiff only estimated the needs of the department of which he was in charge at 1,000 tons for the year 1916, and that negotiations were opened for 1,000 tons, for which the Semet-Solvay Company made a price of nine dollars per ton, but afterwards withdrew the offer unless Miller would agree to purchase an additional amount at a higher price, which he finally concluded to do, taking the 1,000 tons for the lime company at nine dollars per ton, and 9,000 tons on speculation for his firm at nine dollars and fifty cents per ton. The contract in fact provides for such a variation in price. But accepting the finding that the purchase of the whole 10,400 tons was in fact made for the lime company, it still remains to determine

what were plaintiff's rights in relation to the profits made on the transaction.

So far as it was possible to use clear and unambiguous language in a written contract, the parties to the agreement between plaintiff and the lime company had made it plain that their intention was that plaintiff was not a partner in the business of the lime company, nor had he any proprietary interest therein, nor in even the department of the business of which he had charge. He was simply a manager of a department of the lime company's business, receiving as a salary for his services an amount equal to twenty-five per cent of the net profits of the department, with a drawing account of fifty dollars a week up to January 31, 1916. The salary was stated to be so fixed on a profit-sharing basis, solely that it might increase with the growth of the departmental business. While plaintiff was entitled to receive a percentage of the profits, if any, determined according to the terms of the agreement, and was entitled to a drawing account up to a fixed date, he was· in no event liable for any share of the losses of the department. His relationship to the lime company was solely that of an employee, and his only right was to salary (after the time for a drawing account had expired) measured by the profit of his department. In case of an unlawful discharge, the measure of his damages would have been the value of his contract to him for the remainder of its term, that is, twenty-five per cent of the net profits of the department for that period. But it is to be noted that if the department profits for the first fiscal year did not amount to $5,000, or if for the ensuing period of at least six months it should appear to the lime company that annual profits to that amount could not reasonably be expected, the company had the option to abolish the department and terminate the agreement on sixty days' notice.

The agreement was made December 2, 1915. The contract for the calcium chloride was made February 15, 1916, delivery to begin March 1, 1916, terminating February 28, 1918, at the rate of 100 tons weekly. The unlawful termination of plaintiff's agreement is claimed to have been made July 29, 1916. Treating the entire contract for calcium chloride as one made for the benefit of the lime company and the department whereof plaintiff was manager and granting that Miller was acting as agent or trustee for the company in making the contract, plaintiff would be entitled to share in the profits on the transactions only as part of the compensation agreed to be paid him under his contract of hiring and not as a separate and independent source of profit to him.

Under the agreement between plaintiff and the lime company, he was to receive an amount equal to twenty-five per cent of the

net profits of the department whereof he was the manager, and the method of determining such profits is fixed with particularity by the agreement itself. Plaintiff has failed to prove that any net profits were ever earned by his department, and of course there is no finding to that effect. Therefore, upon the present state of the record, he has failed to prove that he was entitled to recover any sum whatever from the lime company under his contract.

If plaintiff has failed to establish his right to recover against his employer, the lime company, he can have no cause of action against Miller individually based on his right to profits under his contract. The learned trial court, deeming the equities to be with plaintiff, has treated Miller as the real party in interest. Because the copartnership of Clifford L. Miller & Company owned all the stock in the lime company, and because Miller, as a partner in the firm, dominated the lime company, he has been held personally liable to account for one-fourth of the profits made by him, the liability arising under a contract made neither with him nor with his firm, but with a *bona fide* corporation. The mere identity of interest is not sufficient to destroy all the attributes of a corporate entity, and to transfer corporate obligations to an individual who has never assumed them. The lime company was a corporation duly organized under the laws of the State of Massachusetts, and was such when the contract with plaintiff was made. It owned and operated a lime plant and quarries at West Stockbridge, Mass., the deed to the property being in its name. It paid its own bills, did all its own business, and was in good financial standing for its own requirements, but did not have enough money to finance the department in question, the money for which was to be loaned by the firm of Clifford L. Miller & Company. It had its own bank account, bought all its own materials in its own name, and owned them, and stood well in the community. It remained in existence as a corporation until it was dissolved by act of the Legislature of the State of Massachusetts, passed in March, 1919, and effective March 28, 1919, thus dissolving said corporation as therein stated before April first of that year. (See Mass. Special Acts of 1919, chap. 111.)

The copartnership of Clifford L. Miller & Company had its office in the city of New York and a mill therein. It was a separate and distinct legal entity from the lime company, and although its members owned the stock of that company and were officers thereof, the two cannot be regarded in law as one or as interchangeable. The line of demarcation between their operations is clear and distinct, and plaintiff made his contract with the corporation and not with the copartnership or its members.

Under all the facts herein Miller, whether claimed to be liable on the theory of unlawful interference with plaintiff's rights with full knowledge of his contract with the lime company, or as an agent or trustee of the lime company, unlawfully withholding moneys belonging to it, and of which plaintiff is entitled to a share, can only be held liable if in fact the plaintiff was entitled to receive from the lime company moneys due him under his contract with it, or because of the breach thereof by it. Miller would under no possible theory be liable to plaintiff unless the company itself was liable to him, for his only right to recover would be because of his contractual rights under the contract.

As plaintiff has failed to show that he was entitled to recover anything from the company, he can have no right to recover against Miller.

The judgment appealed from should, therefore, be reversed and a new trial ordered, with costs to appellant to abide the event. The findings of fact and conclusions of law should be reversed or modified in accordance with this opinion.

CLARKE, P. J., SMITH, PAGE and GREENBAUM, JJ., concur.

Judgment reversed and new trial ordered, with costs to appellant to abide event. Settle order on notice.