Elena Ruth SASSOWER and Doris L. Sassower, Plaintiffs,

v.

Katherine M. FIELD, Curt Haedke, Lilly Hobby, William Iolonardi, Joanne Iolonardi, Robert Rifkin, individually, and as Members of the Board of Directors of 16 Lake Street Owners, Inc., Hale Apartments, DeSisto Management, Inc., 16 Lake Street Owners, Inc., and Roger Esposito, individually, and as an officer of 16 Lake Street Owners, Inc., Defendants.

No. 88 Civ. 5775 (GLG).

United States District Court, S.D. New York.

Sept. 5, 1990.

Elena Ruth Sassower, White Plains, N.Y., pro se.

Eli Vigliano, Yonkers, N.Y. (Eli Vigliano, David Cohen, of counsel), for plaintiff Doris L. Sassower.

Bleakley Platt & Schmidt, White Plains, N.Y. (James W. Glatthaar, of counsel), for former co-plaintiff John McFadden.

Lawrence J. Glynn, White Plains, N.Y. (Lawrence J. Glynn, of counsel), for defendants Katherine M. Field, Curt Haedke, Lilly Hobby, William Iolonardi, Joanne Iolonardi, Robert Rifkin, Individually and as Members of the Board of Directors of 16 Lake Street Owners, Inc., and 16 Lake Street Owners, Inc.

Dennis T. Bernstein, Tuckahoe, N.Y. (Dennis T. Bernstein, of counsel), for defendant Hale Apartments.

Marshall, Conway & Wright, P.C., New York City (Jeffrey A. Marshall, of counsel), for defendant DeSisto Management, Inc.

## OPINION

GOETTEL, District Judge.

## I. FACTS

This contentious litigation arises from a relatively simple set of facts. Defendant 16 Lake Street Owners, Inc. is the owner of the real property and cooperative apartment building located at 16 Lake Street, White Plains, New York. Defendants Field, Hobby, Haedke, W. Iolonardi and Rifkin, constituting the Board of Directors, are authorized to act upon applications to purchase stock and the corresponding proprietary lease as well as applications to sublet apartments in the building. John McFadden is the proprietary lessee for apartment 2C of the 16 Lake Street building and is the owner of 548 shares of stock in 16 Lake Street Owners, Inc.[1]

By contract dated October 29, 1987, John McFadden agreed to transfer his 548 shares of stock in 16 Lake Street Owners, Inc. and the proprietary lease for apartment 2C, to plaintiffs Elena Ruth Sassower and Doris L. Sassower. After the agreement was signed, Elena Sassower and her father, George Sassower, took possession of the apartment as their principal residence in accordance with the contract terms. They remain in possession to date. In January 1988, the plaintiffs applied for a loan commitment to purchase the stock shares and proprietary lease for apartment 2C and received that commitment in April 1988. In May 1988 the plaintiffs were interviewed by certain members of the admissions committee of 16 Lake Street Owners, Inc. By letter to the defendant DeSisto Management, Inc., the managing agent for 16 Lake Street Owners, Inc., dated May 19, 1988, the Board of Directors denied the plaintiffs' application to purchase the stock shares and proprietary lease for apartment 2C from John McFadden. By letter dated May 20, 1988, DeSisto Management informed the plaintiffs of this decision. The plaintiffs and John McFadden subsequently requested that the Board of Directors reconsider its decision. On June 14, 1988, the Board of Directors unanimously voted to deny the plaintiffs' request for reconsideration of the original decision disapproving the purchase application.

In August 1988, the plaintiffs commenced this lawsuit alleging eight causes of action against the various defendants. Those actions may be summarized as follows: violations of the federal Fair Housing Act, 42 U.S.C. §§ 3601–3631 (1982); violations of the federal Civil Rights Act, 42 U.S.C. § 1983 (1982); violations of New York Human Rights Law, N.Y.Exec.Law § 296(5)(a) (1982); violations of New York Civil Rights Law, N.Y.Civ.Rights Law § 19–a (1982); failure to comply with the provisions of the corporate by-laws and the proprietary lease governing transfers; breach of the duty of good faith; intentional infliction of emotional distress; unequal treatment of shareholders; breach of fiduciary duty; and failure to comply with its own policies. The plaintiffs' allegations of discrimination, contained primarily in the first cause of action, are based on their contention that the defendants' decision to deny their application to purchase the shares and proprietary lease for apartment 2C was made on account of their status as single, Jewish women.[2]

Defendants 16 Lake Street Owners, Inc. and the individually named members of the Board of Directors (collectively referred to as the "Lake Street defendants") have moved for summary judgment. Also moving for summary judgment at this time are defendant Hale Apartments, whose involvement is described in section III below, and defendant DeSisto Management.[3] The

---

1. John McFadden, formerly a plaintiff in this action, voluntarily discontinued his claims against the defendants by order signed by the court on June 15, 1990. He has, however, submitted papers in opposition to defendant Hale Apartments' request for costs and attorneys' fees. *See infra.*

2. On August 17, 1990, the plaintiffs filed an amended complaint. The amended complaint contains the same causes of action as the original complaint. Consequently, we will consider the defendants' motions for summary judgment as directed against the amended complaint.

3. Defendant Roger Esposito's motion for summary judgment, filed on July 23, 1990, has been withdrawn without prejudice to renewal at a later date.

plaintiffs vigorously oppose the motions.[4]

## II. SUMMARY JUDGMENT STANDARD

Fed.R.Civ.P. 56(c) provides that summary judgment is appropriate if "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." The burden is on the moving party to demonstrate the absence of a material, factual dispute. Fed.R.Civ.P. 56(e); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). Once that burden is met, the non-moving parties "must set forth specific facts showing that there is a genuine need for trial," Fed.R. Civ.P. 56(e), and there must be more than merely "some metaphysical doubt as to [those] material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). They cannot simply rest on their pleadings. Fed.R.Civ.P. 56(e); *First Nat'l Bank v. Cities Services Co.*, 391 U.S. 253, 289, 88 S.Ct. 1575, 1592–93, 20 L.Ed.2d 569 (1968). In determining whether a sufficient showing has been made, however, the court must draw all reasonable inferences and resolve all ambiguities in favor of the non-moving parties. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962) (per curiam).

## III. DEFENDANT HALE APARTMENTS

■ Defendant Hale Apartments is the former owner of the building located at 16 Lake Street, and was the sponsor of the plan which converted the building from rental to cooperative ownership. On August 2, 1983, defendant 16 Lake Street Owners, Inc. purchased the building from Hale Apartments pursuant to the conversion plan. Upon the conversion, Hale Apartments became the owner of the unsold shares of the apartment corporation allocated to the unsold apartments and acquired the proprietary leases appurtenant thereto.

In 1986, Hale Apartments allegedly ceased to exist[5] and transferred its unsold shares in the apartment corporation to a tenancy in common consisting of twelve individuals.[6] Each year since 1986, Hale Apartments' successor tenancy voted all of its shares for the election of Robert A. Rifkin to the board of directors. Robert Rifkin is also a member of the tenancy in common.

The plaintiffs' claims against Hale Apartments are unique. Essentially, they seek to double-pierce the corporate veil. Not only do they contend that Robert Rifkin is individually liable for the board of directors' decision to deny the plaintiffs' application, but they further contend that Hale Apartments is vicariously liable for Robert Rifkin's conduct.[7] The plaintiffs' position, however, suffers from both factual and legal defects.

Initially, the affidavit of Robert Rifkin unequivocally states that he was not involved in the initial decision to deny the plaintiffs' application. That decision was made by three board members, defendants Curt Haedke, Lilly Hobby and William Iolonardi, after their interview with the plaintiffs.[8] Mr. Rifkin's affidavit is corrobo-

---

**4.** The plaintiffs cross-moved pursuant to Fed.R. Civ.P. 56(f) for a continuance of the defendants motions for summary judgment. That motion was denied on the record in open court on August 10, 1990.

**5.** Although we are told that Hale Apartments is defunct and is no longer in operation, no formal dissolution was ever effectuated.

**6.** As of November 16, 1987, the tenancy in common owned 4,013 unsold shares of the apartment corporation, representing 15.58% of the outstanding shares.

**7.** The plaintiffs concede that "[t]he inclusion of Hale Apartments and the attempt to include the successor to Hale Apartments in this lawsuit is based on the sole contention that Hale Apartments and/or its successor, the tenancy in common, are individually liable for the acts of Robert A. Rifkin, their elected board representative." Defendant Hale Apartments' Rule 3(g) Statement ¶ 24 (agreed to in Plaintiffs' Local Rule 3(g) Statement ¶ B).

**8.** Katherine Field, who was also a member of the board of directors, was present at the interview but allegedly did not participate in the interview or the deliberations that ensued.

rated by the deposition testimony of John McFadden who stated that "[t]he people who made the determination were the people who held the interview; Daisy Hobby, Curt Haedke and Bill Iolonardi." McFadden Deposition at 208. Mr. Rifkin's only involvement in the decision to deny the plaintiffs' application was his participation in the unanimous vote of the board of directors on June 14, 1988 declining to reconsider the first decision of the three board members.

Although the plaintiffs decline to admit this factual scenario in their 3(g) statement, they fail in all respects to controvert it. They offer no proof whatsoever that Robert Rifkin was involved in the initial decision to deny the plaintiffs' application. We harbor grave doubts that Robert Rifkin's vote against reconsidering the original denial of the plaintiffs' application permits any inference of discrimination or misconduct. *See Irizarry v. 120 West 70th Owners Corp.*, No. 86–3503, slip op., 1986 WL 8073 (S.D.N.Y. July 15, 1986) (board member absent at decisional meeting cannot be held liable individually or as a director of the owner/corporation).

Even allowing, however, that such conduct might be sufficient to impose liability on 16 Lake Street Owners, Inc. and, perhaps, Robert Rifkin individually, the plaintiffs' attempt to hold Hale Apartments vicariously liable is insupportable. The plaintiffs contend that the election of Robert Rifkin to the board of directors was, in essence, the creation of an express agency relationship. Consequently, the plaintiffs argue that Hale Apartments is bound by Rifkin's actions and liable for his alleged misdeeds.

■ The tenancy in common that makes up the entity called Hale Apartments is a large shareholder of 16 Lake Street Owners, Inc. Holding over 15% of the outstanding shares of the corporation, the twelve members of the tenancy in common have the power to vote together and elect one member of the board of directors. They do not have the power to affect the conduct of the corporation directly. Their only authority is through their elected directors. *See Continental Securities Co. v. Belmont*, 206 N.Y. 7, 16, 99 N.E. 138 (1912). Once elected, a member of a board of directors acts for the corporation and his actions will be attributed to the corporation. *See generally* W. Cary & M. Eisenberg, *Corporations* 381 (5th ed. 1980) ("The directors' duties are, in the main, duties owed to the corporate entity as such rather than to the shareholders or creditors individually. . . ."). Although the member of the board may consider the interests of those who elected him and may act in furtherance of their goals, he is not, by virtue of his election, their designated agent. Thus, we cannot say that the actions of Rifkin as a member of the board of directors can be attributed to Hale Apartments. To say otherwise would be to hold individual shareholders liable every time the board member they elected acted contrary to law. The courts of this state have long held that piercing of the corporate veil under such circumstances is unwarranted. *See, e.g., Walkovszky v. Carlton*, 18 N.Y.2d 414, 417–19, 276 N.Y.S.2d 585, 223 N.E.2d 6 (1966).

In sum, the shareholders who elected Robert Rifkin to the board of directors cannot be held liable for his alleged misconduct absent some showing that the corporate form should be disregarded. *See Export Credit Corp. v. Diesel Auto Parts Corp.*, 502 F.Supp. 207, 208 (S.D.N.Y.1980) (*citing Ferrante Equipment Co. v. Lasker-Goldman Corp.*, 26 N.Y.2d 280, 283, 309 N.Y.S.2d 913, 258 N.E.2d 202 (1970)). The plaintiffs have failed to make such a showing. The tenants in common comprising Hale Apartments did nothing more in connection with this matter than elect Robert Rifkin to the board of directors. This is not the sort of abandonment of corporate form that would justify a piercing of the corporate veil. *See Walkovszky*, 18 N.Y.2d at 419, 276 N.Y.S.2d 585, 223 N.E.2d 6; *Kleinbaum v. Miller*, 202 A.D. 126, 195 N.Y.S. 821 (1st Dep't 1922). Consequently, the plaintiffs' claims against Hale Apartments cannot stand. Hale Apartments' motion for summary judgment is granted.

## IV.  DEFENDANT DeSISTO MANAGEMENT, INC.

■ DeSisto Management, Inc. was the managing agent for 16 Lake Street Owners, Inc. when the plaintiffs submitted their application to purchase apartment 2C.  The totality of DeSisto Management's involvement with the plaintiffs' application was as follows: (1) DeSisto received the plaintiffs' purchase application and transmitted it to the board of directors;  (2) upon making its decision, the board of directors notified DeSisto that the plaintiffs' application had been rejected;  (3) DeSisto notified the plaintiffs of the board's decision;  and (4) DeSisto notified the plaintiffs of the board's refusal to reconsider the original denial of their application.  The essence of DeSisto Management's role, as stated by plaintiff Doris Sassower, was that "any request for information ... [was] to be channeled through them and any request on their part, on the board's part, for information [was] also to be channeled through them."  D. Sassower Deposition at 502.  In addition to plaintiff's characterization of DeSisto's role, the ministerial nature of its responsibilities was testified to by John McFadden and Roger Esposito, the attorney for the board of directors.  *See* McFadden Deposition at 142 ("The board of directors outlined policies, told DeSisto what they wanted to do.");  Esposito Deposition at 657 ("Anthony DeSisto had absolutely no authority or power or did anything with regard to the application other than transmit the package.")

The plaintiffs attempt to impose liability on DeSisto Management by contending that an agent is responsible for his torts even though he may have been acting at the direction of his principal.  Although we do not quarrel with this principle, the plaintiffs have failed to demonstrate that DeSisto Management committed any torts or misdeeds.  Rather, DeSisto was nothing more than a conduit or avenue of communication between the board of directors and the plaintiffs.  DeSisto in no way contributed to the board's decision to deny the application and had no authority to influence the board in any manner.  The plaintiffs' claims against DeSisto are a classic example of shooting the messenger for bringing bad news.  Although that may have been an appropriate remedy in times gone by, it will not be sanctioned by this court.  Consequently, the defendant DeSisto Management's motion for summary judgment is granted.

## V.  LAKE STREET DEFENDANTS

■ The Lake Street defendants are comprised of Katherine M. Field, Curt Haedke, Lilly Hobby, William Iolonardi, Joanne Iolonardi and Robert Rifkin, individually and as members of the board of directors, and 16 Lake Street Owners, Inc.  To the extent that the plaintiffs have a valid claim of housing discrimination, these are proper defendants to that claim as they comprised the decision-making body of the cooperative apartment building.  The Lake Street defendants move for summary judgment, therefore, on the grounds that the plaintiffs cannot prove a prima facie case of housing discrimination and that there are no genuine issues of material fact in dispute requiring a trial.

■ The law in this circuit on housing discrimination claims was laid down in *Robinson v. 12 Lofts Realty, Inc.*, 610 F.2d 1032 (2d Cir.1979).  In that case, brought against a corporation that owned a cooperative building, the court stated that

a plaintiff who claims that he as an individual has been the victim of a discriminatory denial of housing, may establish his prima facie case by proving the following facts:

(1) that he is [a member of a protected class];

(2) that he applied for and was qualified to rent or purchase the housing;

(3) that he was rejected;  and

(4) that the housing opportunity remained available.

*Id.* at 1038 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973)).  Thus, the *Robinson* standard requires proof of discriminatory effect only, not proof of discriminatory intent.  *Accord United States v. Yonkers Bd. of Educ.*, 837 F.2d 1181,

1217 (2d Cir.1987); *Huertas v. East River Housing Corp.*, 674 F.Supp. 440, 453 (S.D. N.Y.1987); *Irizarry v. 120 West 70th Owners Corp.*, No. 86–3503, slip op. (S.D.N.Y. July 15, 1986) (available on WESTLAW).

Applying the *Robinson* standard to the instant matter, there can be little doubt that the plaintiffs have made out a prima facie case of housing discrimination. The plaintiffs are women and are Jewish and, therefore, fall within two protected classes. *See Gold v. Gallaudet College*, 630 F.Supp. 1176, 1184 (D.D.C.1986); *Meiri v. Dacon*, 607 F.Supp. 22, 23 (S.D.N.Y.1984), *aff'd*, 759 F.2d 989 (2d Cir.), *cert. denied*, 474 U.S. 829, 106 S.Ct. 91, 88 L.Ed.2d 74 (1985). The plaintiffs applied to purchase apartment 2C and received a mortgage commitment, evidencing their financial ability to purchase. Nonetheless, the plaintiffs' application was rejected and the housing opportunity remains available.

Once the plaintiffs have met their burden of establishing a prima facie case, the burden shifts to the defendants to articulate a legitimate, nondiscriminatory reason for rejecting the plaintiffs' application. *See Robinson*, 610 F.2d at 1039; *Huertas*, 674 F.Supp. at 454. The defendants have articulated 14 reasons why the Sassowers' application was denied. Rather than attempt to paraphrase them, we quote directly from the Lake Street defendants' submissions:

a) the highly visible and audible arrest of GEORGE SASSOWER in the building and the resultant terror of the other residents in seeing him lurking about the building,

b) the use of the apartment by GEORGE SASSOWER for the apparently illegal practice of law after he had been disbarred,

c) use of the apartment for commercial purposes resulting in loud noise late at night,

d) the conduct and apparent attitude of ELENA SASSOWER in demanding preferential and special treatment by the Board,

e) in deference to her preception [sic] of the alleged injustices that had been imposed by her father,

f) DORIS SASSOWER'S reluctance to abide the rules pertaining to financial background and credit searches of all applicants including her son-in-law, JOSEPH PEPE KARMEL,

g) the sudden last minute addition of JOSEPH PEPE KARMEL to the class of "PURCHASERS",

h) DORIS SASSOWER'S severe criticism of the Board as being "too stiff" on the subject of its rules,

i) ELENA SASSOWER'S demonstrated attitude toward the house rules pertaining to her cat,

j) the apparent keeping of an animal upon the premises,

k) the occupation of apartment 2C by the SASSOWERS without approval of the admissions committee,

l) the notoriety attached to GEORGE SASSOWER and DORIS SASSOWER,

m) the long and lengthy history of vexatious litigation involving both DORIS SASSOWER and GEORGE SASSOWER [9] and

n) the apparent disregard of and resistance to rules and regulations pertaining to the use of property's evidenced by DORIS SASSOWER, GEORGE SASSOWER and ELENA RUTH SASSOWER.

Memorandum of Law in Support of Defendants' Motion to Dismiss and/or Summary Judgment at 24–26 (references to deposition transcripts and case citations omitted). Without attempting to evaluate the veracity of the defendants' proffered reasons for denying the plaintiffs' application, we recognize that they have satisfied their burden of articulating non-discriminatory reasons

---

**9.** Our own research reveals that George and/or Doris Sassower have initiated, on their own behalf as parties plaintiff, approximately eight or nine lawsuits in federal court in the past ten years and at least 27 lawsuits in state court since 1976. Doris Sassower is an attorney admitted to the bar of the State of New York. George Sassower, formerly an attorney of this state, has been disbarred.

for their action. Thus, the burden shifts back to the plaintiffs to demonstrate that the defendants' stated reasons were not their real reasons but were, rather, only a pretext for discrimination.

In response to the defendants' proffered reasons for denial, the plaintiffs essentially advance four main arguments.[10] First, the plaintiffs contend that despite certain board members' assertions that they did not know the plaintiffs' religion at the time they considered their application, upon visiting the plaintiffs in apartment 2C, the board members observed various Jewish artifacts and symbols within the apartment. Thus, the plaintiffs contend that the defendants' assertion that the plaintiffs' religion was not a factor in their decision should be discredited. The disputed testimony regarding the defendants' knowledge and intent raise factual issues requiring a trial on the merits. *See Patrick v. Le-Fevre*, 745 F.2d 153, 159 (2d Cir.1984).

Second, the plaintiffs argue that the defendants failed to comply with their own internal guidelines. Specifically, the plaintiffs point to a document entitled "Cooperative Guidelines for Admission." [11] This document, which lays out purportedly acceptable reasons for denying a purchase application, is also the subject of much dispute between the parties. The affidavits and depositions of various parties with regard to whether these guidelines were adopted by the board of directors are contradictory. *Compare* Affidavit of K. Field, ¶ 16 ("Plaintiffs do not and cannot allege that the Board resolved to adopt those guidelines because in fact, it did not.") *with* Esposito Deposition at 543 (board of directors approved Cooperative Guidelines).

Clearly a dispute exists regarding the applicability and enforceability of the Cooperative Guidelines. Although the relevance of the document is not yet completely clear, it presents a triable issue of fact on the question of pretext.

Third, the plaintiffs contend that, contrary to the dictates of the Cooperative Guidelines, in denying the plaintiffs' application the defendants failed to give the plaintiffs contemporaneous reasons for the rejection. Aside from the question of whether this violates the allegedly-adopted guidelines, the fact that the 14 reasons stated by defendants as supporting their decision were not transmitted to the plaintiffs at the time of rejection, and were first enunciated some time after the plaintiffs challenged the board's decision, contributes to the plaintiffs' claim of pretext.

Fourth, the plaintiffs contend that, when they learned of the board's alleged reasons for rejection, they communicated to the board their interest in obviating their concerns. Specifically, the plaintiffs offered to have George Sassower move out of the apartment and the proprietary lease amended to eliminate the possibility of George Sassower's inhabitance. The board's decision to abide by its earlier rejection despite this offer is an issue that should be presented to the jury.

It is apparent that the plaintiffs' claims against the Lake Street defendants cannot be resolved on summary judgment. The plaintiffs have stated the elements of a prima facie case of housing discrimination and the defendants have articulated nondiscriminatory reasons for their actions. The

---

**10.** In addition to these arguments, the plaintiffs generally dispute the veracity of the reasons stated by the board for their decision.

**11.** The precatory paragraph of this document reads as follows:

The Board of Directors in approving or disapproving co-op apartment transfers must comply with both constitutional and statutory discrimination prohibitions. Confronted with this dilemma and particularly when considering either an application involving minorities or single women, when a co-op board decides to reject a purchaser, it may become incumbent upon the co-op, through either its manag-

ing agent or counsel, to articulate its valid reasons for the decision to reject in order to refute a subsequent claim by the rejected applicant or the seller of the apartment that the rejection was based upon some prohibited discriminatory ground. Reasons which could justify rejection of a purchaser might include any of the following, all of which should be spelled [out] with some specifically [sic] depending upon the particular facts involved. Amended Complaint, Ex. E. This paragraph is then followed by 15 potential reasons why an application might legitimately be denied.

question of pretext, however, is one that must be decided by a jury. The parties bitterly dispute many material facts and the conflicting versions can only be resolved by a jury. Although we believe that the plaintiffs face a formidable task in proving their claims of sex and/or religious discrimination, the nature of the evidence is such that a jury's evaluation is required. *See* C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 2732.2 at 349–54 (2d ed. 1983). Consequently, the Lake Street defendants' motion for summary judgment is denied.

## VI. CONCLUSION

In sum, the defendants Hale Apartments and DeSisto Management, Inc.'s motions for summary judgment are granted. Because disputed issues of material fact preclude summary judgment in favor of the Lake Street defendants, their motion is denied. Defendant Hale Apartments' motion to recover costs, disbursements and attorneys fees is denied without prejudice to renewal at the conclusion of this litigation.

SO ORDERED.