**Elena Ruth SASSOWER and Doris L. Sassower, Plaintiffs,**

v.

**Katherine M. FIELD, Curt Haedke, Lilly Hobby, William Iolonardi, Joanne Iolonardi, Robert Rifkin, individually, and as Members of the Board of Directors of 16 Lake Street Owners, Inc., Hale Apartments, DeSisto Management, Inc., 16 Lake Street Owners, Inc., and Roger Esposito, individually, and as an officer of 16 Lake Street Owners, Inc., Defendants.**

No. 88 Civ. 5775 (GLG).

United States District Court,
S.D. New York.

Nov. 13, 1990.

Elena Ruth Sassower, White Plains, N.Y., pro se.

Eli Vigliano (Eli Vigliano, of counsel), Yonkers, N.Y., for plaintiff Doris L. Sassower.

Diamond, Rutman & Costello (Mariann Wetmore, of counsel), New York City, for defendant Roger Esposito.

## OPINION

GOETTEL, District Judge:

The background of this litigation is set forth in *Sassower v. Field,* 752 F.Supp. 1182 (S.D.N.Y.1990), familiarity with which is assumed and will not be repeated in detail here. Briefly, Elena and Doris Sassower contracted on October 29, 1987 with John McFadden to purchase his 548 shares of stock in 16 Lake Street Owners, Inc. and his proprietary lease in Apartment 2C. Roger Esposito, who was attorney to 16 Lake Street Owners, Inc. and an officer of the cooperative corporation, represented Mr. McFadden in that sale. Whether or not the Board assented to that representation is unclear but not germane to this motion. On the day the contract was signed, Mr. Esposito wrote to the plaintiffs saying that they and their immediate family could occupy the apartment.[1] Elena Sassower and her father, George Sassower, then took possession of the apartment as their principal residence pursuant to the contract. The plaintiffs received a mortgage commitment in April 1988 in order to purchase the stock and lease. In May 1988, the plaintiffs were interviewed by certain members of the admissions committee of 16 Lake Street Owners, Inc. Afterward, on May 19, 1988, the Board of Directors denied the plaintiffs' application to purchase the stock shares and proprietary lease for apartment 2C from John McFadden. They were informed of this decision by letter on May 20, 1988. After a request by the plaintiffs and John McFadden to reconsider their decision, the Board unanimously voted on June 14, 1988 to decline to reconsider their decision.

In August 1988, plaintiffs and McFadden (who later withdrew from the action) commenced this lawsuit. Eight causes of action were alleged against the various defendants: violation of the federal Fair Housing Act; violations of § 1983; violations of New York Human Rights Law and the New York Civil Rights Law; failure to comply with the provision of the corporate by-laws and the proprietary lease governing transfers; breach of the duty of good faith; intentional infliction of emotional distress; unequal treatment of shareholders; breach of fiduciary duty; and failure to comply with its own policies. (We note that certain of the causes of action appear to appropriately assert a shareholder derivative suit as to McFadden, but may not state a cause of action for the remaining plaintiffs.)

Summary judgment was granted in favor of defendants Hale Apartments and DeSisto Management. *Sassower v. Field, supra.* Before us today is a motion for summary judgment by defendant Roger Esposito, a practicing attorney.[2] Mr. Esposito

---

1. It is unclear in what capacity Mr. Esposito was acting when this letter was written offering occupancy.

2. The plaintiffs argue that this motion is incorrectly before this court because the defendant did not properly file or serve his papers. While indicative of the sloppy work of his attorneys, these are not fatal problems because they can be easily corrected. The motion papers were sent directly to Chambers. As is our practice with motion papers, they were held for review and argument. They will be docketed and filed with this decision. Plaintiffs were offered the opportunity, both before and at oral argument, to adjourn the defendant's motion so that they could have more time to respond. Plaintiffs preferred to go forward with the motion, requesting instead the opportunity to file reply papers. This request was granted. These papers were filed one week later. (It should be noted that the local rules require responses to be served within two days.) In light of the course of action that they chose, plaintiffs' ob-

was an officer of the cooperative corporation, serving as Secretary and Assistant Vice–President. As in most corporations where the attorney for the corporation so serves, his duties as an officer were largely ministerial, limited to signing documents to effectuate sales and carrying out administrative tasks assigned by the Board.

Federal Rule of Civil Procedure 56(c) states that summary judgment shall be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The moving party must demonstrate the absence of a material, factual dispute, F.R.C.P. 56(e). If that burden is met, the non-moving party "must set forth specific facts showing that there is a genuine need for trial", *id.*, and that there is more than "some metaphysical doubt as to [those] material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). While all reasonable inferences must be drawn and all ambiguities must be resolved in favor of the non-moving party, *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962), it is still necessary that the disputed facts be material to the causes of action alleged in the complaint. *Belpar Marine, Inc. v. Adams & Porter Inc.*, 638 F.Supp. 1001, 1003 (S.D.N.Y.1986); *Moss v. Ward*, 450 F.Supp. 591, 594 (W.D.N.Y.1978). Thus, conflicting affidavits and genuine questions about actual events cannot preclude summary judgment unless the existence of those facts establish an element essential to the case.

■ The primary issue before us is not whether housing discrimination has been successfully alleged by the plaintiffs, but rather whether such a claim can even be asserted against Mr. Esposito. We have before said that the plaintiffs have made out a prima facie case of housing discrimination against the board members. *Sassower v. Field, supra.* However, a claim of discrimination lies only against those who discriminated. Here, in his affidavit in support of his motion, the defendant maintains that he did not participate in the decision to reject the application of the plaintiffs and, furthermore, had no authority as an officer of the corporation to participate in admission decisions. Mr. Esposito asserts that the decision on applications was made by an Admissions Committee to whom such authority was delegated by the Board of Directors. Indeed, as attorney for seller, he was urging approval of the application and warned the Board that, in light of the Sassower family's proclivity toward litigation, *see id.* at 1158 n. 9, they could expect to be sued. At this point, we must note that both John McFadden, and his attorney, James Glatthaar, submitted affidavits in which they state that Mr. Esposito had no decision making authority and that he should never have been made a defendant.[3] Esposito's position is, therefore, corroborated.

Plaintiffs concede that Mr. Esposito was not a member of the Board of Directors and that he was not a member of the Admissions Committee. However, they state in their 3(g) statement that the defendant did participate in the vote to reject the plaintiffs' application and that Mr. Esposito did have decision making authority. It is not sufficient, though, to simply contend that their complaint sets forth a valid cause of action. F.R.C.P. 56(e). The material disputed facts must be documented in some fashion. This, plaintiffs have failed to do.

jections to the procedural defects resulting from Mr. Esposito's attorney's carelessness, are deemed to be waived.

**3.** In their reply papers, both plaintiffs have suggested that since the McFadden and Glatthaar affidavits were made in opposition to the imposition of sanctions, they should not be given any weight. We agree with the plaintiffs' character-

ization of these affidavits. However, a statement sworn under the penalty of perjury does not carry less credibility because it was made for a purpose other than the one for which it is used. Since the plaintiffs have not adduced any evidence to negate the affidavits of both McFadden and Glatthaar, we have no cause to doubt the statements contained therein.

For example, plaintiffs point to several contradictions between the testimony of Mr. Esposito and his co-defendants. These, they argue, demonstrate Mr. Esposito's lack of good faith and put into issue his entire credibility. While the credibility of a witness is indeed a matter for the jury, contradictions concerning facts irrelevant to the issue of whether Mr. Esposito actually participated in the rejection are of no consequence to the summary judgment decision before us today. The existence of an official admissions committee, the existence of co-op admission guidelines, whether the Board was aware that Mr. Esposito was representing Mr. McFadden in the sale and whether Mr. Esposito had any authority to write to the plaintiffs on October 29, 1987 do not, in any way, affect the basic question of whether or not Mr. Esposito participated in the rejection decision. Even if, for example, there was no Admissions Committee, the conclusion that Mr. Esposito participated in a Board vote to reject the Sassower application does not follow. It is axiomatic that as an officer, and not a director of the corporation, Mr. Esposito could not vote on board matters. Since Mr. Esposito was not a member of the Board, as plaintiffs agree, we are unable to make the leap that they urge.

In support of their claim that Mr. Esposito directly participated in the discrimination, plaintiffs argue that he facilitated the illegal conduct of the board. One such way was that "he allowed himself to be the conduit by which Defendant Board members presented to Plaintiffs trivial, undocumented, unverified and demonstrably spurious reasons for the rejection of their application." Affidavit of D. Sassower, ¶ 26

(October 19, 1990). A similar argument was rejected in our earlier summary judgment decision as shooting the messenger for bringing bad news.

 Plaintiffs also contend that Mr. Esposito participated in the discrimination by allowing the co-op to inquire into their marital status in violation of New York law.[4] Presumably, this argument is based on some theory of aiding and abetting discrimination. However, such inquiries are not barred by law so long as they do not express, directly or indirectly, any limits resulting from the protected status. N.Y. Exec.Law § 296(5) (McKinney Supp.1990). The New York State Human Rights Law states that

> [i]t shall be an unlawful discriminatory practice for the owner, lessee, sub-lessee, assignee, or managing agent of, or other person having the right to sell, rent or lease a housing accommodation ... to use any form of application for the purchase, rental or lease of such housing accommodation or to make any record or inquiry in connection with the prospective purchase, rental or lease of such a housing accommodation which expresses, directly or indirectly, any limitation, specification or discrimination as to race, creed, color, national origin, sex, age, or disability or marital status, or any intent to make any such limitation, specification or discrimination.

N.Y.Exec.Law § 296(5)(a)(3) (McKinney Supp.1990); *see also* N.Y.Exec.Law §§ 296(5)(b)(3) and (c)(3) (McKinney Supp. 1990). What this law prohibits, plainly and clearly, is the use of the inquiry to discriminate on the basis of marital status.[5] In-

---

**4.** In their reply papers, plaintiffs retreat from their earlier position that New York law bars any inquiry into marital status. They now argue that state law presumes that if such an inquiry is made, there is discriminatory intent. Affidavit of Doris Sassower ¶ 16 (November 2, 1990). We cannot find any legal authority to support this theory.

**5.** Plaintiffs submitted to this court a copy of a handbook containing rulings on inquiries published by the New York State Division of Human Rights. *See* Affidavit of D. Sassower, Ex. 1 (November 2, 1990). This handbook was apparently written to guide employers and others in

their interpretation of § 296. One section of the handbook states that the law expressly prohibits real estate sellers from asking certain questions prior to making a real estate sale or lease. One of the forbidden questions concerns marital status. As plaintiffs should well know, a pamphlet and its recommendations are not law. (Indeed, the handbook contains no legal authority for its recommendations.)

The New York State Human Rights Law simply does not contain any prohibition against inquiring about marital status. Indeed, inquiries about arrests or pending criminal accusations in connection with certain activities are

quiries about protected status are permitted where the information is necessary for a legitimate purpose. *See Police Assoc. of the City of Mount Vernon v. New York State Public Employment Relations Board,* 126 A.D.2d 824, 510 N.Y.S.2d 742 (3d Dept.1987) (employers may deny health insurance coverage to an employee who was married to a person who had comparable health insurance). The co-op board's inquiry into marital status can be construed as legitimate since, under the terms of the lease, the tenant and her immediate family were permitted to occupy the apartment. The co-op has a reasonable interest in knowing who potentially will occupy the apartment. A question about marital status would reveal this information.

Other arguments raised by plaintiffs are similarly groundless. Indeed, the record shows that the decision to reject the Sassowers' application was made by Daisy Hobby, Curt Haedke and Bill Iolonardi and thereafter approved by the entire Board. Plaintiffs have not adduced any evidence to contradict this showing. We cannot deny summary judgment on the claim that evidence will be produced at trial or in a future motion when there has already been two years of contentious discovery.[6]

■ Finally, the plaintiffs argue that Mr. Esposito facilitated the discriminatory acts of the Board by abdicating his necessary role as the Board's advisor and by failing to disclose to the Sassowers certain information. At oral argument and in their supplemental opposing affidavits, the plain-

tiffs focused on the potential conflict inherent in the dual role that Mr. Esposito took on in acting as attorney for John McFadden in the sale while continuing to serve as the Board of Director's attorney. While plaintiffs may have pointed out issues that could be raised between Mr. Esposito and the defendant Board and between Mr. Esposito and his insurance carrier[7], these problems do not constitute a cause of action for them. The plaintiffs have at no time alleged that Mr. Esposito was acting as their attorney. Moreover, they have stated no duty owed by Mr. Esposito directly to them.

As attorney to the co-op Board of Directors, Mr. Esposito is not, and cannot be held, responsible for the motives of his clients nor liable for the actions of his clients unless, as the plaintiffs themselves point out, he took substantial steps to facilitate the discrimination itself. Furthermore, mere knowledge and approval of primary wrongdoing (if such was the case—and the evidence is strongly to the contrary) is not the substantial assistance that is required to attribute the acts of the board to its attorney. *See Morin v. Trupin,* 711 F.Supp. 97 (S.D.N.Y.1989). Here, the plaintiffs have simply failed to show in any way how any of Mr. Esposito's actions facilitated the Board's discrimination or the harm that accrued from his alleged omissions.

For the reasons stated here, defendant Roger Esposito's motion for summary judgment is granted. Defendant Esposi-

---

explicitly barred. *See* N.Y.Exec.Law § 296(16) (McKinney 1982). Given that the New York State Legislature specifically chose to ban certain inquiries by using specific language, we cannot agree that a similar ban can be read into the language of § 296(5).

6. Plaintiffs have argued that this motion for summary judgment is premature because their motion for further discovery is still pending. On July 19, 1990, the magistrate decided all of the outstanding discovery motions. On August 3, 1990, he sent a memorandum to this court and to counsel indicating that all discovery had been completed. Toward the end of August, plaintiff Elena Sassower delivered numerous materials from depositions that had been conducted five or six months earlier, advising that there were pending issues concerning the depo-

sitions. On September 3, 1990, the magistrate wrote to plaintiffs' counsel, advising him that these submissions were untimely, that there were no remaining pending issues, that he would not review the voluminous submissions, and that they should be picked up by plaintiffs. No objections to this ruling were ever filed.

Moreover, on October 26, 1990, at oral argument, we denied their oral application for further discovery in light of the lengthy and extensive discovery that has taken place over the last two years.

7. Mr. Esposito's malpractice insurance carrier is providing his defense in this action. We should also note that Mr. Esposito's position as Attorney to the Board of Directors was terminated by the Board on June 14, 1988.

to's motion to recover costs, disbursements and attorney's fees is denied without prejudice to renewal at the conclusion of this litigation.

It goes without saying that plaintiffs' frivolous motion for Rule 11 sanctions is denied.

SO ORDERED.