**Elena Ruth SASSOWER, Doris L. Sassower, Plaintiffs–Appellants,**

v.

**Katherine M. FIELD, Curt Haedke, Lilly Hobby, William Iolonardi, Joanne Iolonardi, Robert Rifkin, individually, and as Members of the Board of Directors of 16 Lake Street Owners, Inc., Hale Apartments, DeSisto Management Inc., 16 Lake Street Owners, Inc., Roger Esposito, individually, and as an officer of 16 Lake Street Owners, Inc., Defendants–Appellees.**

**No. 954, Docket 91–7891.**

United States Court of Appeals, Second Circuit.

Argued Feb. 28, 1992.

Decided Aug. 13, 1992.

Elena Ruth Sassower, pro se.

Doris L. Sassower, pro se.

Dennis T. Bernstein, Tuckahoe, N.Y., for defendant-appellee Hale Apartments.

Lawrence J. Glynn, White Plains, N.Y., for defendants-appellees Field, Haedke, Hobby, William Iolonardi, Joanne Iolonardi, Rifkin, & 16 Lake St. Owners, Inc.

Steven L. Sonkin, New York City (Marshall, Conway & Wright, on the brief), for defendants-appellees DeSisto Management, Inc. & Esposito.

Julius L. Chambers & Charles Stephen Ralston, New York City, submitted an ami-

cus curiae brief for NAACP Legal Defense & Educational Fund, Inc.

Before: LUMBARD, NEWMAN and WINTER, Circuit Judges.

JON O. NEWMAN, Circuit Judge:

This appeal from a supplemental judgment imposing sanctions upon two unsuccessful plaintiffs for the vexatious conduct of litigation involves the extraordinary remedy of an award of nearly $100,000 assessed against *pro se* litigants, occasioned by extraordinary conduct. The judgment was entered by the District Court for the Southern District of New York (Gerard L. Goettel, Judge), 138 F.R.D. 369, requiring Doris L. Sassower and her daughter, Elena Ruth Sassower, to pay defendants' attorney's fees and expenses of $93,350 at the conclusion of the Sassowers' unsuccessful suit claiming housing discrimination. We conclude that Judge Goettel was abundantly justified in imposing sanctions against both plaintiffs and that the amount imposed upon Doris Sassower was fairly determined, but that the amount of the sanction imposed on Elena Sassower must be reconsidered in light of her limited financial resources.

## FACTS

Doris and Elena Sassower filed their suit *pro se* in 1988, alleging violation of the Federal Fair Housing Act, 42 U.S.C. §§ 3601–3631 (1988), and other federal and state law claims. At various stages of the litigation, they were represented by counsel. Doris Sassower was then a member of the bar, although her current status is in some doubt. *See Attorney Sanctioned by Court of Appeals*, N.Y.L.J. (Sept. 11, 1991). Defendants include the corporate owner of a cooperative apartment building in White Plains, New York, and directors and an officer of the corporate owner. The plaintiffs alleged that the defendants had discriminated against them by rejecting their application to acquire an apartment in

the building through purchase of coop stock shares and assignment of a proprietary lease from a former occupant. Plaintiffs alleged discrimination on account of their status as single, Jewish women. Defendants contended that the rejection had nothing to do with the status of the plaintiffs, but was based primarily on the owner's disapproval of the use to be made of the apartment. While approval was being sought, the apartment was occupied by George Sassower, the former husband of Doris and the father of Elena.[1] Evidence at trial indicated that he was arrested at the apartment for what the District Court understood was the illegal practice of law. Evidence also indicated that the occupants of the apartment building included Jews and single women, a circumstance tending to refute plaintiffs' claim concerning the basis for their rejection.

After some of the defendants were dismissed on motion for summary judgment, *see Sassower v. Field*, 752 F.Supp. 1182 (S.D.N.Y.1990); *Sassower v. Field*, 752 F.Supp. 1190 (S.D.N.Y.1990), the case was tried before a jury for seven days. The jury answered specific interrogatories, rejecting all of plaintiffs' claims, including the claim that the religion, gender, or marital status of the plaintiffs was a reason for the rejection of their application to purchase the apartment.

After entry of judgment for the defendants, the District Court granted the defendants' request for counsel fees and costs as prevailing parties pursuant to the Fair Housing Act, 42 U.S.C. § 3613(c)(2) (1988). In the alternative the Court imposed sanctions against the plaintiffs pursuant to Fed. R.Civ.P. 11, 28 U.S.C. § 1927 (1988), and the Court's inherent power "because of their tactics of delay, oppression and harassment." District Court opinion of August 12, 1991 (hereafter "Opinion"), at 377. Judge Goettel carefully reviewed the extraordinary pattern of vexatious litigating tactics engaged in by the plaintiffs during the pendency of the litigation and concluded that they had acted "in bad faith,

---

1. George Sassower is a disbarred attorney whose proclivity for frivolous and vexatious litigation has repeatedly resulted in sanctions.

vexatiously and unreasonably." *Id.* at 376 (footnotes omitted). As he stated, "The Sassowers pursued this litigation as if it was a holy war and not a court proceeding, managing these proceedings in a fashion that vexatiously, wantonly and for oppressive reasons increased the legal fees enormously." *Id.* at 375.

As summarized by the District Court, the plaintiffs' conduct included the following:

> They made several unsupported bias recusal motions based upon this court's unwilling involvement in some of the earlier proceedings initiated by George Sassower.... There were continual personal attacks on the opposing parties and counsel.... In virtually every instance where a court ruling was not satisfactory to them, plaintiffs routinely made a motion to reargue. In addition, plaintiffs filed two improper interlocutory appeals which were subsequently withdrawn.... Finally, they have now filed a mammoth motion for a new trial and sanctions against opposing counsel which seeks to reargue virtually every aspect of the litigation for the third time.

Opinion at 375 (citations and footnotes omitted). The District Judge also noted that the plaintiffs "attempted to communicate directly with the defendants rather than through counsel in order to force through their settlement demands." *Id.* at 376 n. 10. Previously the Magistrate Judge supervising discovery had recommended dismissal of the complaint because of Doris Sassower's egregious failure to allow discovery as directed by the Court. The District Judge, though noting misbehavior warranting sanctions, declined to dismiss because the complaint would still be pursued by Elena. He nonetheless observed:

> It is patently clear that Doris L. Sassower has been guilty of attempting to manipulate the court by appearing as attorney on those matters which could assist her case while refusing to be deposed herself, claiming health problems. We were compelled at an earlier time to allow [her] to appear *pro se* and to relieve her attorney because of the law of this Circuit, even though we could foresee the type of manipulation that has frequently occurred.

*Id.* at 376. The Court also noted her recalcitrance at her own deposition and her role assisting another attorney "in conducting incredibly harassing depositions of certain of the defendants." *Id.* at 377. Some of that questioning included what the Court termed "particularly shocking and abusive" questioning of a Black member of the coop's board of directors, questioning laced with racial innuendo. *Id.* at 379.[2] Repeatedly throughout the litigation, the District Judge cautioned the plaintiffs that their vexatious and harassing conduct, if continued, was likely to incur monetary sanctions at the conclusion of the case.

The District Judge awarded to the defendants a total of $92,000 in fees and $1,350 in expenses, and imposed liability for these amounts jointly upon Doris and Elena Sassower. Plaintiffs appeal from the award of attorney's fees and from the denial of their motion for a new trial and their request to have sanctions imposed on the defendants.

## DISCUSSION

### I. Attorney's Fees

■ A. *Fair Housing Act.* At the time the complaint in this case was filed, the Fair Housing Act authorized an award of attorney's fees only to a prevailing *plaintiff.* 42 U.S.C. § 3612(c) (1982). The cur-

**2.** Judge Goettel noted that Doris Sassower's vexatious tactics had been observed by other courts. He quoted the following comments of Justice Samuel G. Fredman of the New York Supreme Court, County of Westchester:

> From the relatively simple molehill of potential issues which could possibly arise from such conduct, Sassower has created a mountain of legal, factual and even political abracadabra. Her actions have taken an inordinate amount of this Court's time and tested its patience beyond the wildest imagination.... [M]onths of actual court time [were] spent in permitting Sassower to preserve her rights by trick and chicanery beyond the concept of most any lawyer who practices in our courts. She is indeed sui generis in her actions.... *Id.* at 376 n. 11 (quoting *Breslaw v. Breslaw,* Slip Op., Index No. 22587/86 at 2, 12 (June 24, 1991)).

rent version, enacted in 1988, Pub.L.No. 100–430, § 8(2), 102 Stat. 1633 (1988), authorizes fees for a prevailing *party*. 42 U.S.C. § 3613(c)(2) (1988). The District Court, noting that the plaintiffs had amended their complaint twice after the effective date of the new fee-shifting provision, awarded fees incurred by the defendants after the effective date. Judge Goettel determined these fees to total $92,000, plus $1,350 of expenses. The rationale for awarding defendants their attorney's fees to this extent was not simply that the defendants were "prevailing part[ies]" but that the lawsuit was "totally meritless." Opinion at 373.

Even if we assume for the argument that the amended fee-shifting provision could be applied to a lawsuit filed before the provision's effective date, to the extent of shifting fees incurred after its effective date, we cannot agree that fees could be awarded under the Fair Housing Act. That statute, like other civil rights fee provisions, permits an award of fees to prevailing defendants only upon a showing that the suit is "frivolous, unreasonable, or without foundation." *See Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421, 98 S.Ct. 694, 700, 54 L.Ed.2d 648 (1978). As the District Judge recognized, the plaintiffs' suit adequately alleged the elements of a *prima facie* case of discrimination and presented a factual dispute for the jury as to whether the plaintiffs had proven that the defendants' articulation of non-discriminatory reasons for their actions was pretextual. *See Sassower v. Field*, 752 F.Supp. at 1189–90.

It is arguable that even a civil rights plaintiff must bear the risk of an award of defendant's attorney's fees when a jury resolves factual disputes in favor of a defendant and a judge concludes that the claim, though requiring jury consideration, was entirely insubstantial. We have upheld fee-shifting after a civil rights bench trial where the plaintiff's testimony was found to have been "an unmitigated tissue of lies." *See Carrion v. Yeshiva University*, 535 F.2d 722, 728 (2d Cir.1976). In the pending case, however, the essential issue was not whether the plaintiffs were credi-

ble in their account of the factual circumstances; it was whether the defendants' explanations for their actions were legitimate or pretextual. There is no finding that the plaintiffs did not believe that they had been the victims of discrimination. Moreover, though there were various disputes as to some details of the dealings between the plaintiffs and the defendants, there was no finding that the plaintiffs' had given a false account of the basic facts alleged to support an inference of discriminatory motive. Nor is this a case where the trial judge expressed the view that no reasonable jury could have found in plaintiffs' favor but reserved ruling on a motion for a directed verdict and submitted the case to the jury simply to have a verdict in the event that a court of appeals might have disagreed with his subsequent ruling to set aside a plaintiffs' verdict, had one been returned. In these circumstances, to award defendants their attorney's fees simply because the jury found in their favor and the trial judge found the verdict overwhelmingly supportable risks imposing too great a chilling effect upon the prosecution of legitimate civil rights lawsuits. We cannot sustain the fee award under the Fair Housing Act.

Though the outcome of the lawsuit adverse to the plaintiffs is an insufficient basis to require them to pay defendants' attorney's fees under the Fair Housing Act, substantial issues remain as to whether the plaintiffs are liable for such fees for the manner in which they conducted the litigation.

B. *Rule 11.* Recognizing the possibility that the fee award might not be sustainable under the Fair Housing Act, Judge Goettel grounded portions of the award alternatively upon Fed.R.Civ.P. 11, 28 U.S.C. § 1927, and the Court's inherent authority. Rule 11 applies, as the District Court recognized, to those who sign a "pleading, motion, and other paper" without making "reasonable inquiry [that] it is well grounded in fact." Fed.R.Civ.P. 11. Judge Goettel assessed $50,000 as a Rule 11 sanction. However, he did not specify the documents the signing of which violat-

ed the Rule. He probably had in mind principally the complaint, though he also noted that "[d]uring the course of this lengthy proceeding, both of [the plaintiffs] signed numerous documents." Opinion at 374. Since we conclude below that the $50,000 portion of the award grounded on Rule 11 is supportable by the exercise of the District Court's inherent authority, we need not return the matter to Judge Goettel for a precise identification of which documents warranted Rule 11 sanctions.

C. *28 U.S.C. § 1927.* As a further alternative to a fee award under the Fair Housing Act, Judge Goettel grounded a portion of the fee award, $42,000, on 28 U.S.C. § 1927, which permits imposition of fees upon "[a]ny attorney or other person admitted to conduct cases in any court of the United States" who "multiplies the proceedings in any case unreasonably and vexatiously." 28 U.S.C. § 1927 (1988). This $42,000 is in addition to the $50,000 awarded under Rule 11. Unquestionably, the conduct of the plaintiffs warranted an award under section 1927. The issue posed by this portion of the award is whether section 1927 sanctions may be imposed on *pro se* litigants, or at least on a *pro se* litigant who was a lawyer at the time of the litigation.

■ Judge Goettel ruled that section 1927 may be applied to non-lawyer *pro se* litigants. The Ninth Circuit has adopted this position. *See Wages v. I.R.S.,* 915 F.2d 1230, 1235–36 (9th Cir.1990), *cert. denied,* — U.S. —, 111 S.Ct. 986, 112 L.Ed.2d 1071 (1991). We disagree. Section 1927 applies to any "attorney or other person admitted to conduct cases" in a federal court. Judge Goettel considered the *pro se* plaintiffs to be "person[s] admitted to conduct cases" because they had been granted permission to proceed *pro se.* Opinion at 377. But the word "admitted" in this context suggests application to those who, like attorneys, gain approval to appear in a lawyerlike capacity. Moreover, parties generally have a right to appear *pro se. See* 28 U.S.C. § 1654 (1988); *O'Reilly v. New York Times Co.,* 692 F.2d 863, 867 (2d Cir.1982). Though the Sassow-

ers' former attorney needed and obtained permission to be relieved, the granting of his motion left the plaintiffs free to proceed *pro se,* without further order of the Court.

Moreover, it is unlikely that Congress intended the phrase "other person" to include a person lacking lawyer-like credentials. The prior version of the statute read "any attorney, proctor, or other person admitted." *See Motion Picture Patents Co. v. Steiner,* 201 F. 63, 64 (2d Cir.1912). This phrasing also suggests that "other person" covers only those admitted to act in a lawyerlike capacity. We also note that the Supreme Court recently recounted, without disagreement, a District Court's assertion that section 1927 "applies only to attorneys." *See Chambers v. NASCO, Inc.,* — U.S. —, —, 111 S.Ct. 2123, 2131, 115 L.Ed.2d 27 (1991). This reference implies approval of the District Court's view, since there would have been no need for the Supreme Court to consider the larger question of the trial judge's inherent authority to sanction if section 1927 had applied to the non-lawyer.

■ Though section 1927 will not support sanctions against Elena Sassower, it is available for use against Doris Sassower, who, though acting *pro se,* was a lawyer, at least at the time of this litigation. Since section 1927 is designed to curb abusive tactics by lawyers, it should apply to Atty. Sassower notwithstanding the fact that her only client in this matter was herself.

D. *Inherent Authority.* Judge Goettel explicitly relied, alternatively, on his inherent authority in the portion of his Opinion awarding Rule 11 sanctions, *see* 138 F.R.D. at 374, and in the portion awarding section 1927 sanctions, at 377. We may reasonably infer that he intended to base the $50,000 portion of the award, alternatively, on his inherent authority, to whatever extent it was not supportable by Rule 11, and to base the $42,000 portion of the award, alternatively on his inherent authority, in the event section 1927 was deemed inapplicable to Elena Sassower.

■ The Supreme Court has made clear that a district court has inherent au-

thority to sanction parties appearing before it for acting in bad faith, vexatiously, wantonly, or for oppressive reasons. *See Chambers v. NASCO, Inc.,* —— U.S. at ——, 111 S.Ct. at 2133. Having reviewed the course of the litigation and the numerous instances of entirely vexatious and oppressive tactics engaged in by the plaintiffs, we agree with Judge Goettel that his inherent authority was properly used to sustain these portions of the award.

█ E. *Amount of Sanctions.* We have ruled that when a court awards defendants attorney's fees, it must take into account the financial circumstances of the plaintiff. *See Toliver v. County of Sullivan,* 957 F.2d 47, 49–50 (2d Cir.1992); *Johnson v. New York City Transit Authority,* 823 F.2d 31, 33 (2d Cir.1987); *Faraci v. Hickey–Freeman Co.,* 607 F.2d 1025, 1029 (2d Cir.1979). No concern need be raised with respect to Doris Sassower. Judge Goettel explicitly relied on trial testimony that revealed that she was living in "a two million dollar mansion." Opinion at 374 n. 6. Though the value of an expensive home does not necessarily demonstrate ability to pay $93,350 in sanctions, Doris Sassower has made no claim on appeal that the sanction is beyond her means. With respect to Elena Sassower, however, Judge Goettel explicitly stated that he did "not believe that she is financially able to respond in the payment of attorneys' fees and sanctions." Opinion at 378 (footnote omitted). He noted that she had claimed during the trial to be indigent. Nevertheless he imposed liability for the fees jointly upon Elena and her mother, though expressing his expectation that "these costs will probably have to be borne solely by" the mother. Opinion at 378.

Though we conclude that the Judge was entitled to find both mother and daughter liable for sanctions, we must vacate the imposition of joint liability for the full amount upon Elena, in the absence of evidence that her financial resources permit an award of that size. Upon remand, the District Court may assess against her such portion of the award as is appropriate in light of her resources.

Though the amount of the sanction that we fully uphold with respect to Doris Sassower is large, it is in fact only a portion of the fees expended by defendants that could have been assessed in view of the plaintiffs' conduct. Judge Goettel chose to award only those fees incurred after the effective date of the amended fee provision of the Fair Housing Act. Since the fee award is being sustained on the basis of authority other than the Act, the selection of this date as a starting point for fees operates as a fortuitous benefit for the plaintiffs.

## II. New Trial

█ Continuing their vexatious and harassing tactics, the plaintiffs submitted to Judge Goettel, several months after the trial, a motion for a new trial under Rule 60(b)(3). The motion was accompanied by several hundred pages of supporting papers and a thousand pages of exhibits. In the main, the motion is nothing more than a reargument of numerous claims made prior to and during the trial, including factual issues resolved against the plaintiffs by the jury. Judge Goettel acted well within his discretion in denying the motion.

We have considered all of the other issues raised by appellants and find them totally lacking in merit.

## CONCLUSION

The denial of plaintiffs' motion for new trial and for sanctions against the defendants is affirmed; the supplemental judgment awarding sanctions against the plaintiffs is affirmed as to liability, affirmed as to amount with respect to Doris Sassower and vacated and remanded as to amount with respect to Elena Sassower.