33 F.3d 585
 Christopher BROOKS; Peggy Brooks; and Fair Housing Contact
Service, Plaintiffs-Appellants,
v.
CENTER PARK ASSOCIATES; Walker R. Coffman; Cynthia A.
Bender; Keith R. Forfia; Sherman I. Pogrund;
and Martin Korey, Defendants-Appellees.
 No. 92-4037.
 United States Court of Appeals,
Sixth Circuit.
 Argued Nov. 18, 1993.
Decided Aug. 25, 1994.
 
 Andrew L. Margolius (argued and briefed), Cleveland, OH and Edward L. Gilbert (argued and briefed), Akron, OH, for Fair Housing Contact Service, plaintiff-appellant.
 Michael E. Edminister, Smith, Hanna, Altwies, Adgate & Edminister; and Keith R. Forfia (argued and briefed), Akron, OH, for Center Park Associates, et al., defendants-appellees.
 Before: MARTIN and RYAN, Circuit Judges, and EDGAR, District Judge.*
 The court delivered a PER CURIAM opinion. BOYCE F. MARTIN, Jr., Circuit Judge (pp. 587-89), delivered a separate concurring opinion.
 PER CURIAM.
 
 
 1
 Fair Housing Contact Service, a tenant representative organization, appeals an award of attorney's fees to landlord Center Park Associates in this action under the Fair Housing Act, 42 U.S.C. Sec. 3601 et seq., involving housing discrimination on the basis of family status. The district court observed that Fair Housing, in filing suit, disregarded the inconclusive results of its own investigation as well as a finding by the United States Department of Housing and Urban Development that there was no reasonable cause to believe discrimination had occurred. Given these circumstances, the district court found that Fair Housing knowingly ran the risk of paying Center Park's attorney's fees under the Act, and then held Fair Housing solely liable for those fees. For the following reasons, we vacate the fee award and remand for further factual findings.
 
 
 2
 In March 1990, Christopher and Peggy Brooks began looking for a rental apartment in Cuyahoga Falls, Ohio. On March 15, they answered an ad in a local newspaper for a one-bedroom apartment renting at $315 a month, plus electricity. The apartment is located at 737 Center Avenue in Cuyahoga Falls, in a complex managed by Center Park Associates.
 
 
 3
 After allegedly making an appointment to meet a female Center Park representative at 4:00 p.m. that same day, the couple went to the apartment complex with $945 in cash. This was intended to cover two months' rent and the security deposit for the apartment. Peggy Brooks was six and one-half months pregnant at the time, and her condition was apparent to a casual observer. At 4:00, a woman allegedly arrived at the complex, saw Christopher and Peggy Brooks from a distance, got back in her car, and departed. After waiting for fifteen minutes, Christopher Brooks called Center Park's off-site rental office. Brooks was told that the woman with whom they had made the appointment was not there, and that the couple should come to the office and discuss the possibility of renting the apartment.
 
 
 4
 Because the couple did not own a car, they realized that they could not make it to the rental office before it closed. Christopher Brooks decided to call and explain that he and his wife would be unable to come in that day. Brooks alleges that the man who answered the phone, after learning that Brooks was married, asked him if he had any children. Brooks informed the man that his wife was pregnant. In response to further questioning, Brooks also stated that he was earning roughly $640 per month working full-time at a Sohio gas station, and that his wife was unemployed. The man replied that a prospective tenant had to earn at least $1,300 per month in order to rent the apartment in question, and also stated that the apartment was too small for them. After Brooks inquired about a two-bedroom apartment, the man told Brooks that he did not make enough money to rent such an apartment either, and allegedly hung up.
 
 
 5
 On July 31, the Brooks couple and Fair Housing Contact Service, an investigative agency and advocate for fair housing, filed a complaint in United States District Court against Center Park. The individual named defendants were Center Park and its limited and general partners. The complaint, as subsequently amended, alleged the following: (1) housing discrimination on the basis of familial status, in violation of 42 U.S.C. Sec. 3604; (2) breach of contract, based on fraud and discrimination; and (3) intentional infliction of emotional distress. The Brooks couple requested $120,000 in compensatory and punitive damages, plus costs and attorney's fees. Fair Housing Contact Service initially requested $50,000 in compensatory damages and costs.
 
 
 6
 The district court denied Center Park's pretrial motions for summary judgment and for sanctions under Federal Rule of Civil Procedure 11. On the first day of trial, Fair Housing amended part of the complaint to request only injunctive relief. After the plaintiffs presented their case, the district court granted Center Park's motion for a directed verdict[1] with respect to the state contract and tort causes of action, but denied the motion with respect to the federal housing discrimination claim. The court also denied Center Park's second motion for a directed verdict just before submitting this issue to a jury. The jury subsequently found for Center Park on the discrimination claim.
 
 
 7
 After prevailing before the jury on the merits, Center Park filed another motion for sanctions under Rule 11 and, in a separate motion, requested $28,621.90 in attorney's fees and costs as a prevailing party under 42 U.S.C. Sec. 3613(c)(2). The district court denied the motion for sanctions, but granted attorney's fees and costs to Center Park in the amount of $10,330.29. The court held Fair Housing Contact Service solely liable for the entire amount of this award, despite the fact that Fair Housing was only one of three plaintiffs in the case.
 
 
 8
 Under Section 3613(c)(2) of the Fair Housing Act, a district court may award attorney's fees to a prevailing defendant if the plaintiff's case was "frivolous, unreasonable, or groundless, or ... the plaintiff continued to litigate after it clearly became so." Foster v. Barilow, 6 F.3d 405, 408 (6th Cir.1993) (quoting Christiansburg Garment Co. v. Equal Employment Opportunity Comm'n, 434 U.S. 412, 422, 98 S.Ct. 694, 701, 54 L.Ed.2d 648 (1978)).[2] A fee award to a prevailing defendant is also appropriate if the plaintiff brought the case in subjective bad faith. Christiansburg, 434 U.S. at 419, 98 S.Ct. at 699. The award of attorney's fees under these standards is discretionary, and our review is thus for an abuse of discretion. Tarter v. Raybuck, 742 F.2d 977, 986 (6th Cir.1984), cert. denied, 470 U.S. 1051, 105 S.Ct. 1749, 84 L.Ed.2d 814 (1985). As we have previously noted, "[a]pplication of these standards requires inquiry into the plaintiffs' basis for filing suit. Awards to prevailing defendants will depend on the factual circumstances of each case." Smith v. Smythe-Cramer Co., 754 F.2d 180, 183 (6th Cir.), cert. denied, 473 U.S. 906, 105 S.Ct. 3530, 87 L.Ed.2d 654 (1985).
 
 
 9
 In the present case, the district court applied Christiansburg and found that Fair Housing Contact Service induced the Brooks couple to file a groundless lawsuit. Insofar as can be determined from its opinion, the court based this conclusion solely on the above-mentioned results of pretrial investigations conducted by Fair Housing and the United States Department of Housing and Urban Development. An award of attorney's fees to a prevailing defendant, however, necessarily requires specific factual findings, as contemplated by this Court in Smith, with respect to the basis for the award. Here, the district court did not make sufficient factual findings to allow us to review either the award or the allocation of liability among the parties. Accordingly, we vacate the district court's award of attorney's fees to Center Park, and remand for further factual findings regarding the plaintiffs' basis for filing suit.
 
 
 10
 For the foregoing reasons, we vacate the district court's award of attorney's fees, and remand for further proceedings consistent with this opinion.
 
 
 11
 BOYCE F. MARTIN, JR., Circuit Judge, concurring.
 
 
 12
 I concur in the majority opinion, but write separately to express my view that, on the record as it now stands, the district court's award of attorney's fees was unwarranted. Under the standard espoused in Christiansburg Garment Co. v. Equal Employment Opportunity Comm'n, 434 U.S. 412, 419-22, 98 S.Ct. 694, 699-701, 54 L.Ed.2d 648 (1978), a defendant in a Fair Housing Act case may recover attorney's fees if the plaintiffs' action was either brought in subjective bad faith, or was frivolous, unreasonable, or groundless. On the facts as alleged by the plaintiffs, the couple had a colorable claim, and thus the action was not groundless. As there is no evidence to support an alternate finding of subjective bad faith, I conclude that the court's award of attorney's fees to the defendants was an abuse of discretion.
 
 
 13
 Fair Housing contends that the district court was precluded from finding plaintiffs' action to be groundless, and awarding attorney's fees to Center Park on that basis, because the plaintiffs prevailed on Center Park's motions for summary judgment and directed verdicts. This Court has stated previously that "we are at a loss to understand how a case that is strong enough to withstand a motion for judgment at the conclusion of the plaintiff's proofs can be considered 'frivolous, unreasonable, or without foundation' " under Christiansburg. Haynie v. Ross Gear Div. of TRW, Inc., 799 F.2d 237, 242 (6th Cir.1986) (per curiam), vacated as moot, 482 U.S. 901, 107 S.Ct. 2475, 96 L.Ed.2d 368 (1987). Here, plaintiffs survived not only one motion for a directed verdict at the close of their evidence, but also a second directed verdict motion before the case was finally submitted to the jury.
 
 
 14
 Center Park, however, argues that the district court's denial of these motions should not operate as a per se bar to its recovery of attorney's fees. In this regard, Center Park notes that the First, Second, and Third Circuits have held that the denial of such motions does not necessarily preclude an award of attorney's fees on the basis that the plaintiff's case was frivolous, unreasonable, or groundless. See Sassower v. Field, 973 F.2d 75, 79 (2nd Cir.1992) (plaintiff's survival of directed verdict motion does not signify that case necessarily has merit); Foster v. Mydas Associates, 943 F.2d 139, 144 (1st Cir.1991) (denial of directed verdict motion, standing alone, not given "decretory significance" in determining whether defendants were entitled to attorney's fees); Brown v. Borough of Chambersburg, 903 F.2d 274, 279 (3rd Cir.1990) ("denial of a motion for a directed verdict does not, as a matter of law, foreclose consideration of a defendant's later request for fees based on the frivolousness of the claim"). In Sassower, for example, the Second Circuit observed that a district court might deny a defendant's motion for a directed verdict, although expressing the belief that no reasonable jury could find for the plaintiff, simply in order to have a jury verdict in the event that a court of appeals disagreed with the district court's view of the merits. Sassower, 973 F.2d at 79; see also Brown, 903 F.2d at 279 (district court's denial of directed verdict motions because it could correct any error after case went to jury, and because court did not have sufficient recollection of facts to rule on motions, did not foreclose finding that case was groundless).
 
 
 15
 Our decision in Haynie does not absolutely foreclose an award of attorney's fees to a civil rights defendant after the plaintiff has prevailed on a motion for a directed verdict. In Haynie, there was no evidence of subjective bad faith, which is an independent basis for supporting a fee award, and there was no suggestion that the district court denied the defendant's directed verdict motion for reasons approximating those described in Sassower or Brown. Our statement in Haynie that "we are at a loss to understand how a case that is strong enough to withstand a motion for judgment at the conclusion of the plaintiff's proofs can be considered 'frivolous, unreasonable, or groundless' " merely reflects how we look at each case on its own facts. I agree with the First, Second, and Third Circuits that the denial of such a motion does not necessarily foreclose a subsequent finding that the plaintiff's case was groundless, given circumstances similar to those set forth in Sassower and Brown.
 
 
 16
 Here, the district court denied the defendants' motion for summary judgment, stating that the plaintiffs had made out a prima facie case. Although the district court did not say so, it may reasonably be inferred that the district court also submitted the case to the jury for that reason. This is not indicative of groundlessness. See Haynie, 799 F.2d at 242.
 
 
 17
 In granting the motion for attorney's fees, the district court erred in relying on the pretrial investigations conducted by Fair Housing and the United States Department of Housing and Urban Development. Negative or inconclusive results of an agency's pretrial investigations, standing alone, are not sufficient proof of groundlessness to support an award of attorney's fees to a civil rights defendant. Stenseth v. Greater Fort Worth and Tarrant County Community Action Agency, 673 F.2d 842, 849 (5th Cir.1982). In the context of employment discrimination, for example, the Equal Employment Opportunity Commission often issues a "no reasonable cause" letter after investigating a claim, but the complaining party still has the right to bring an action. See, e.g., Hale v. Cuyahoga County Welfare Dept., 891 F.2d 604 (6th Cir.1989) (after receiving EEOC "no reasonable cause" letter, plaintiff brought action, prevailed in district court, was awarded attorney's fees, and, although victory was reversed on appeal, was not assessed defendant's attorney's fees). As the Supreme Court observed in Christiansburg, 434 U.S. at 422, 98 S.Ct. at 700-01:
 
 
 18
 [T]he course of litigation is rarely predictable. Decisive facts may not emerge until discovery or trial. The law may change or clarify in the midst of litigation. Even when the law or the facts appear questionable or unfavorable at the outset, a party may have an entirely reasonable ground for bringing suit.
 
 
 19
 In the present case, I believe that the district court impermissibly "engage[d] in post hoc reasoning by concluding that because [the] plaintiff did not ultimately prevail, [its] action must have been unreasonable or without foundation" at the outset, based on the agency's investigative results. Id. Accordingly, insofar as the issue of groundlessness is concerned, I conclude that the district court erred in awarding attorney's fees to Center Park.
 
 
 20
 Center Park also argues, in the alternative, that the fee award was appropriate because the plaintiffs brought their action in subjective bad faith. The district court made no findings in this regard. There is nothing in the record that demonstrates the plaintiffs did not believe that a discriminatory act had occurred. To find subjective bad faith sufficient to support an attorney's fee award to a prevailing civil rights defendant, there must be strong evidence that the plaintiff was untruthful regarding the basic allegations necessary for the claim. See Sassower, 973 F.2d at 79 (attorney's fees may be awarded to defendant after plaintiff loses on directed verdict motion if court finds plaintiff's testimony perjured regarding basic facts necessary to her claim); compare Haynie, 799 F.2d at 242 (plaintiff's suspect testimony on collateral matters not a ground for granting attorney's fees to defendant) with Carrion v. Yeshiva University, 535 F.2d 722, 728 (2nd Cir.1976) (plaintiff's testimony offered to establish prima facie case was "unmitigated tissue of lies" warranting award of attorney's fees to defendant).
 
 
 21
 Here, there is no evidence supporting an inference of subjective bad faith, on the part of the plaintiffs, with respect to the allegations of discrimination. The central issue at trial was whether Center Park's motivations for its actions were non-discriminatory, rather than whether the plaintiffs were credible in their account of the basic facts necessary to support their claim. I cannot escape concluding that plaintiffs did not bring their action in subjective bad faith, and that Center Park therefore is not entitled to recover its attorney's fees. Finally, I wish to emphasize that there is no legal authority for the district court's statement that a housing advocate, such as Fair Housing, should be placed at "equal risk" with defendants regarding liability for attorney's fees. Under Christiansburg, the same standard applies to Fair Housing as to any other plaintiff in civil rights litigation. For these reasons, I believe that the district court's award of attorney's fees to Center Park, on the basis of the current record, was unjustified.
 
 
 
 *
 The Honorable R. Allan Edgar, United States District Judge for the Eastern District of Tennessee, sitting by designation
 
 
 [1]
 A motion for a directed verdict is now called a motion for judgment as a matter of law. FED.R.CIV.P. 50
 
 
 [2]
 42 U.S.C. Sec. 3613(c)(2), as amended in 1988, provides that "the court, in its discretion, may allow the prevailing party ... a reasonable attorney's fee and costs." The term "prevailing party" is defined in 42 U.S.C. Sec. 3602(o ) as "having the same meaning as such term has in [42 U.S.C. Sec. 1988]." In Hughes v. Rowe, 449 U.S. 5, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980), the Supreme Court applied the Christiansburg standard in interpreting the "prevailing party" fee-shifting provision of 42 U.S.C. Sec. 1988. As this Court concluded in Barilow, the Christiansburg standard thus applies to attorney's fee awards under Section 3613(c)(2) of the Fair Housing Act. Barilow, 6 F.3d at 408