97 F.3d 118
 Michael P. KELLY and John T. Kelly (95-3008/4141), Petitioners,
Dionne Staples (95-3107), Petitioner,
v.
SECRETARY, UNITED STATES DEPARTMENT OF HOUSING AND URBAN
DEVELOPMENT, on behalf of Dionne STAPLES, Respondent.
 Nos. 95-3008, 95-3107 and 95-4141.
 United States Court of Appeals,
Sixth Circuit.
 Argued April 18, 1996.
Decided Sept. 30, 1996.
Rehearing and Suggestion for Rehearing En Banc Denied Jan.
24, 1997.*
 
 Robert G. Kelly (argued and briefed), Norwood, OH, for Michael P. Kelly, John T. Kelly in Nos. 95-3008, 95-3107 and 95-4141.
 Dennis J. Dimsey, Marie K. McElderry (argued and briefed), U.S. Department of Justice, Civil Rights Division, Appellate Section, Washington, DC, for U.S. Department of Housing and Urban Development in Nos. 95-3008, 95-4141.
 Frederick M. Morgan, Jr. (argued and briefed), Helmer, Lugbill, Martins & Neff, Cincinnati, OH, for Dionne Staples in Nos. 95-3008, 95-3107 and 95-4141.
 Before: MERRITT, Chief Judge; LIVELY and RYAN, Circuit Judges.
 MERRITT, C.J., delivered the opinion of the court, in which LIVELY, J., joined. RYAN, J. (pp. 122-24), delivered a separate dissenting opinion.
 MERRITT, Chief Judge.
 
 
 1
 This case is on appeal for the second time from an order of the Department of Housing and Urban Development ("HUD" or "the agency") finding liability and ordering damages against apartment owners Michael and John Kelly for housing discrimination. In this decision we carry out the earlier decision of this court that HUD's neglect and mishandling of the case seriously impaired the ability of the parties to settle the claim and substantially increased the damages sought by Ms. Staples. See Kelly v. HUD, 3 F.3d 951 (6th Cir.1993) (Kelly I). Since the Administrative Law Judge (ALJ) did not reduce the damages as instructed on remand beyond a nominal $1.00 amount, we REVERSE that decision and award damages as described below. On the matter of attorney's fees, we AFFIRM the ALJ's grant of fees and costs to Ms. Staples but REVERSE the denial of fees to the Kellys and order that $20,000 of their fees and costs be paid by HUD.
 
 Facts and Procedural History
 
 2
 The facts of this case are described extensively in Kelly I, 3 F.3d at 952-953, and we summarize them only briefly here. The Kellys own apartments in Cincinnati, Ohio. While looking for an apartment, Dionne Staples, a single mother of twin five-year old daughters, called the telephone number on a "For Rent" sign outside an apartment owned by the Kellys. After describing her family situation, Ms. Staples was informed that the Kellys only allowed "one child per bedroom" which implied that the two bedroom apartment she had asked about would not be available to her. Ms. Staples hung up the telephone and immediately called H.O.M.E., Inc., a non-profit fair housing organization in Cincinnati. She made no further attempt to rent an apartment from the Kellys. After a month and a half, she rented another apartment, which was not as convenient, increasing her commute to work and creating other transportation and child care problems. She filed her complaint with HUD alleging housing discrimination in violation of 42 U.S.C. § 3604 on May 17, 1990.[1]
 
 
 3
 HUD appointed Charles Jung to investigate the claim and also to act as conciliator between the parties. Jung completed his investigation on October 2, 1990, after which time he made no further contact with the Kellys. HUD did not issue its Charge of Discrimination until March 2, 1992, two years after the incident took place.
 
 
 4
 After a hearing in May 1992, the ALJ found the Kellys liable under 42 U.S.C. § 3604 and awarded $10,430.76 in damages. Of that amount, over $6,000 accounted for actual economic damages and $3,500 was ordered to compensate for emotional distress. The ALJ cited HUD's unexplained delay in completing its investigation and noted that the damage award would have been substantially lower had the case been processed in a timely manner. J.A. at 177. Specifically, the ALJ noted that Ms. Staples' out-of-pocket damages "are nearly double what they would have been if the case had been tried within the period contemplated by the Congress." J.A. at 174.
 
 
 5
 On appeal in Kelly I, the Sixth Circuit upheld the ALJ's liability finding, but vacated the damage award and remanded the case for further attempts at conciliation. Kelly I, 3 F.3d at 958. Failing that, the court ordered the ALJ to reconsider his damage award in light of the opinion, "but in no case should damages be assessed for the period during which HUD completely neglected this case." Id. On remand, the ALJ stated that he could find no period of "complete neglect" and reduced the damages by only a nominal $1.00. The ALJ subsequently ordered an award of attorney's fees and costs to Ms. Staples and denied an award of fees to the Kellys.
 
 Discussion
 1. Damages
 
 6
 In this appeal, we undertake the task set by the Sixth Circuit in Kelly I, but not met by the ALJ on remand, of ascertaining the proper damage award for Ms. Staples in light of the agency's misconduct in this case. This is a case of an administrative agency run amok. It is not necessary here to repeat the list of HUD's delays and missteps other than to recall that the agency's conduct violated not only Congressional statute and HUD's own regulations but also basic principles of adjudication. See Kelly I, 3 F.3d. at 953-56. We follow the mandate of Kelly I that a respondent in a housing discrimination case cannot be made to pay for the government's neglect. Baumgardner v. HUD, 960 F.2d 572 (6th Cir.1992), supports our view that an appellate court may reduce damages caused by HUD's delay.
 
 
 7
 The ALJ's initial award of over $6,000 for economic damages was based on an accrual period from the date of the incident to the date that HUD finally issued its Charge of Discrimination. While this might be a reasonable accrual period in the case where HUD processes the claim in accordance with statutory time limits, it is unreasonable where, as here, HUD takes twenty-five months to issue its Charge of Discrimination without so much as an explanation to the parties. Instead, we find that the reasonable accrual period for damages in this case is twelve months: the period within which Congress intended HUD to carry out its administrative responsibilities and the standard term of a rental lease. By the ALJ's calculations, twelve months after the incident, Ms. Staples' had incurred damages totalling $3,571.03, and this is the proper measure of her economic damages. See J.A. at 174, n. 19. By the same reasoning, we find that the damages awarded to Ms. Staples for emotional distress and loss of housing opportunity are more properly set at $1,000. Again, although the ALJ's award was higher, it included the period during which HUD mishandled the case. We cannot ask the Kellys to pay for emotional distress caused by HUD. Thus, we find that Ms. Staples is entitled to damages totalling $4,571.03.
 
 2. Attorney's fees
 
 8
 The ALJ was technically correct that Ms. Staples is entitled to an award of attorneys fees and costs under the Fair Housing Act, 42 U.S.C. § 3612(p) (1988), since she prevailed on her claim of housing discrimination. In the exercise of our equitable jurisdiction, we hold, in addition, that the Kellys are entitled to some portion of their fees and costs from HUD under the Equal Access to Justice Act ("EAJA"), 28 U.S.C.A. § 2412(d)(1)(A) and 5 U.S.C. § 504(a)(1) (1988).
 
 
 9
 EAJA is a fee-shifting statute which provides that in litigation brought by or against the United States, the government shall be responsible for the attorney's fees and expenses of the prevailing party if the government's position was not "substantially justified." 28 U.S.C.A. § 2412(d)(1)(A) (1988). The Supreme Court has held that in order to be a prevailing party for the purposes of fee-shifting under the civil rights statutes, a party need not prevail on the "central issue" but may prevail on significant secondary issues. Texas State Teachers Ass'n v. Garland Independent School District, 489 U.S. 782, 109 S.Ct. 1486, 103 L.Ed.2d 866 (1989). Here, even though the Kellys were defeated--we believe narrowly and just barely--on the question of liability, they prevailed on several other significant issues, including the vindication of their right to receive reasonable conciliation and to the payment of damages that reflect only the price of their conduct, not the costs attributable to the government's neglect. Thus, for the purposes of applying EAJA here, the Kellys were a prevailing party. Furthermore, although HUD's initial posture in bringing the claim may have been justified, given its untoward conduct in the case throughout, its overall position cannot be said to be "substantially justified." To fail to correct this situation and to enforce an award of attorneys' fees against petitioners without a set off or recoupment against HUD would be a dereliction of judicial responsibility of a high order.
 
 
 10
 Although this case does not present the typical EAJA award scenario, we limit our holding to these facts because we find that the circumstances for which the statute was intended present themselves here. Congress enacted EAJA in 1980 in order to curb "the unreasonable exercise of Government authority." See Gregory C. Sisk, The Essentials of the Equal Access to Justice Act: Court Awards of Attorney's Fees for Unreasonable Government Conduct (Part One), 55 La.L.Rev. 217, 220 n. 1 (quoting H.R.Rep. No. 1418, 96th Cong., 2d Sess. 12 (1980)). Here, the government abused its authority by subjecting the Kellys to an unreasonable administrative procedure that not only tread dangerously close to violating their due process rights but that, if unreviewed, would have subjected them to double damages. The Kellys prevailed on not one, but two appeals at great cost to themselves. They have also incurred the increased fees of Ms. Staples due to the two appeals. For these reasons, we find that under EAJA the Kellys are entitled to $20,000 of their fees and costs for this action.3. Interest and Recordkeeping Requirements
 
 
 11
 The Kellys are not responsible for interest on the damage award up until this point. In Adkins v. Asbestos Corp., 18 F.3d 1349 (6th Cir.1994), this court followed the Supreme Court's decision in Kaiser Aluminum & Chemical Corp. v. Bonjorno, 494 U.S. 827, 110 S.Ct. 1570, 108 L.Ed.2d 842 (1990), in holding that "interest on a judgment should not accrue until the monetary damages have been meaningfully ascertained." Adkins, 18 F.3d at 1351. Because damages have not been "meaningfully ascertained" until now, no interest is due on any earlier award. With regard to the three-year recordkeeping requirement that was ordered by the ALJ in his initial decision to begin in February 1993, the Kellys shall comply with whatever portion of the requirement remains unmet--that is, they shall be required to keep records pursuant to the initial order for a total of three years. Any time during which they have already done so will count towards the three years.
 
 
 12
 Our dissenting colleague overlooks the fact that six judges of this court have found that the Cincinnati office of HUD has dealt unfairly with respondents in two cases brought to our court. In Baumgardner v. Secretary of HUD, 960 F.2d 572 (6th Cir.1992), three judges of this court expressed more than impatience with HUD. The court noted that HUD not only failed to follow its own procedural rules in processing the Baumgardner complaint, but it failed to follow a statutory mandate reflecting congressional concerns about timely notice to parties. Id. at 577. The failure of HUD to follow the statutory and regulatory rules seriously prejudiced the possibility of conciliation in that case. In Kelly I, 3 F.3d 951 (6th Cir.1993), three different judges of this court stated that they were "surprised and distressed" to have another HUD case from Cincinnati where the agency "ignored time requirements and generally displayed a cavalier attitude toward the rights of parties against whom it brings charges." Id. at 954. In Kelly I, not only did HUD fail to follow the statutory mandate and its regulations with respect to timely notice, it violated its regulations by assigning the investigator Jung, who had shown a distinct bias against the respondents, as conciliator in the case. The panel in Kelly I believed that this assignment of Jung ruled out any real possibility of conciliation. Kelly I, 3 F.3d at 955. The recitations in these two opinions reflect more than just an impatience with HUD. They reflect the conclusion of the judges who studied the original records that, at least in these two cases, HUD had not been even-handed and had clearly rendered it unlikely that one of the purposes of the Act--to settle these matters by conciliation rather than litigation--would be achieved. This was ascribed to HUD's attitude, lack of concern for the rights of respondents, and refusal to follow congressional directions and its own regulations.
 
 Conclusion
 
 13
 For the foregoing reasons, we REVERSE the damage award ordered below and order the Kellys to pay Ms. Staples $4,351.03 in damages. We AFFIRM the award of attorney's fees to Ms. Staples, but REVERSE the denial of fees to the Kellys. We order the agency to pay $20,000 in attorney's fees and expenses incurred by the Kellys.
 
 
 14
 RYAN, Circuit Judge, dissenting.
 
 
 15
 Although there is much in the majority opinion with which to disagree, I shall limit my strong disagreement to just two points:
 
 
 16
 . The court's reduction of the damages awarded to Dionne Staples; and
 
 
 17
 . The order that HUD pay $20,000 of the Kellys' attorney fees.
 
 I.
 
 18
 The ALJ awarded damages to Staples in the amount of $10,430.76 on the basis of an accrual period of 25 months, from March 1990, when Staples was wrongfully denied housing, until May 1992, the date of the HUD hearing. The ALJ calculated the period correctly because damages are recoverable from the date Staples would have moved into the denied housing until the date of the hearing. See Miller v. Apartments and Homes of New Jersey, Inc., 646 F.2d 101, 112 (3d Cir.1981). But, the majority is angry at HUD for what a previous panel of this court has found was HUD's "complete neglect" in timely resolving Staples's housing discrimination case against the Kellys. Therefore, it has reduced the award of damages to Staples from $10,430.76 to $4,571.03 stating "the reasonable accrual period for damages in this case is twelve months." Maj. op. at 121. There is absolutely nothing in the record to support "twelve months" as the appropriate period for the damage award and, to its credit, the majority does not claim there is any record support for what it has done. The ALJ, obedient to this court's instructions in Kelly v. HUD, 3 F.3d 951 (6th Cir.1993) (Kelly I), carefully examined the record and invited briefing from the parties in an effort to determine the duration of the period of "complete neglect" the court described in its opinion in Kelly I. Neither the ALJ nor the parties were able to identify any such period. Neither does the majority opinion.
 
 
 19
 It is unjust in the extreme to penalize the victim, Staples, and reward the discriminators, the Kellys, because the majority is impatient with HUD.
 
 II.
 
 20
 The court has directed that pursuant to the provisions of the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412(d)(1)(A), HUD must pay the Kellys' attorney fees in the amount of $20,000. To justify its order, the court was required to interpret the EAJA and conclude that the Kellys are "prevailing parties" and that HUD's position, vis-a-vis the Kellys, was not "substantially justified."
 
 
 21
 Section 2412(d) of the EAJA provides, in relevant part:
 
 
 22
 Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.
 
 
 23
 28 U.S.C. § 2412(d)(1)(A) (emphasis added).
 
 
 24
 It is perfectly plain from an examination of the record and the briefs of the parties that the Kellys are not "prevailing parties" in this case and that they have failed to demonstrate that HUD's position was not "substantially justified."
 
 
 25
 In order to recover attorney fees under the EAJA, a litigant must establish three conditions: 1) that it is a "prevailing party"; 2) that the government's position was without substantial justification; and 3) that no special circumstances exist warranting a denial of attorney fees. Perket v. Secretary of Health and Human Services, 905 F.2d 129, 132 (6th Cir.1990).
 
 
 26
 A prevailing party under the EAJA is one who "succeed[s] on any significant issue in litigation which achieves some of the benefit the part[y] sought in bringing suit." Kreimes v. Department of Treasury, 764 F.2d 1186, 1188 (6th Cir.1985) (citations omitted). This court has held that to receive attorney fees from HUD under the EAJA, a party "must have prevailed in the underlying litigation against vis-a-vis HUD." Heeren v. City of Jamestown, Kentucky, 39 F.3d 628, 631 (6th Cir.1994). Whether a litigant is a "prevailing party" is a factual determination that will not be disturbed absent clear error. As a general matter, a procedural victory is insufficient to establish that a litigant has "prevailed" for purposes of an award of attorney fees under the EAJA. Kitchen Fresh, Inc. v. NLRB, 729 F.2d 1513 (6th Cir.1984). Indeed, one is not a "prevailing party" simply because he obtains a remand for further proceedings before the agency from which he appealed. Sullivan v. Hudson, 490 U.S. 877, 887, 109 S.Ct. 2248, 2255-56, 104 L.Ed.2d 941 (1989). Even a significant procedural victory, if it is not addressed to the merits of the action, does not render a litigant a "prevailing party." Escobar v. Bowen, 857 F.2d 644, 646 (9th Cir.1988).
 
 
 27
 The majority opinion states that the Kellys "prevailed on several other significant issues, including the vindication of their right to receive reasonable conciliation and to damages that do not reflect the price of the government's neglect." Maj. op. at 121-22. From that, the majority concludes that the Kellys are "prevailing parties." The two most significant problems with the court's statement, of course, are first, that the Kellys did not prevail on several issues; they obtained no more than a second chance at conciliation--one issue, and a limited procedural issue at that. The majority opinion, however, includes the result of this appeal in the category of "issues" the Kellys "won" to justify its conclusion that the Kellys are prevailing parties. The second problem with the majority's reasoning, directly stemming from the first, is that this court is precluded by statute from considering the apparent "victory" on this appeal as a basis for determining that the ALJ "clearly erred" in finding that the Kellys were not "prevailing parties" under the EAJA.
 
 
 28
 The majority not only credits the Kellys for a victory that could not possibly have been included in the ALJ's "prevailing party" calculus, it effectively awards the Kellys attorney fees for which they have made no request. Simply stated, the court grants the Kellys attorney fees sua sponte, in complete disregard of the requirements of the EAJA. The EAJA also requires that before the government can be made to pay a private litigant's attorney fees under the EAJA, it must be shown that the government's position in the litigation was not "substantially justified." The substantial justification to which the statute refers, has to do, of course, with the government's "litigating position" and not to the underlying agency position. Trident Marine Constr., Inc. v. District Eng'r Army Corps of Eng'rs, 766 F.2d 974 (6th Cir.1985). Or, as stated by another panel of this court, "the governing principle of the [EAJA] is that the 'United States should pay those expenses which are incurred when the government presses unreasonable positions during litigation.' " Westerman, Inc. v. NLRB, 749 F.2d 14, 16 (6th Cir.1984) (emphasis added) (citations omitted).
 
 
 29
 The Kellys rely on Brooks v. Center Park Associates, 33 F.3d 585 (6th Cir.1994), for the proposition that when an agency action is arbitrary or unreasonable, a party is entitled to attorney fees. However, Brooks creates no such rule. Brooks involved an award of attorney fees under the Fair Housing Act to a landlord who was sued for violating the Fair Housing Act on the basis of familial status. HUD conducted an investigation and concluded that there was no reasonable cause to believe that the landlord engaged in discrimination. The plaintiffs filed suit anyway and lost after a jury trial. The court awarded the landlord attorney fees because, manifestly, the landlord in Brooks was a "prevailing defendant." Nothing in the Brooks opinion suggests that a non-prevailing defendant is entitled to attorney fees on the basis of alleged arbitrary or unreasonable agency action. To its credit, the majority does not rely on Brooks in its award of attorney fees to the Kellys; it appears to rely, instead, on a determination to teach HUD a lesson.
 
 
 30
 Even if the Kellys were prevailing parties, which they are not, and the government's position was not substantially justified, which it was, the court's award of $20,000 in attorney fees for the Kellys has no basis in law or in fact. Section 2412(d)(1)(B-C) of the EAJA sets an explicit ceiling on the amount of attorney fees that may be awarded to a prevailing party. It states, in relevant part, that fees "shall not be awarded in excess of $75 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee." 28 U.S.C. § 2412(d)(2)(A). This method of calculation is known as the "lodestar" method.
 
 
 31
 The EAJA expressly requires an attorney to submit an application that includes "an itemized statement from any attorney ... representing ... the party stating the actual time expended." 28 U.S.C. § 2412(d)(1)(B). Generally, this is a fact-intensive inquiry that is manifestly not appropriate for an appellate court in the first instance. The Kellys have not complied with any of the foregoing requirements for an award of attorney fees from the government; and the majority has sub silentio excused them from doing so--all in disregard of the law. The result is an unedifying exercise in unrestrained judicial power.
 
 
 32
 I must, therefore, respectfully dissent.
 
 
 
 *
 Judge Ryan would grant rehearing for the reasons stated in his dissent
 
 
 [1]
 The complaint alleged discrimination on the basis of race and familial status. After the investigator found no evidence for the race discrimination claim, the complaint was amended to include only the familial status claim