Frank A. BALCAR, Plaintiff,

v.

BELL AND ASSOCIATES, LLC, Harry F. Bell, Jr., Esq., AIC Attorney William L. Bands, Esq., AIC Attorney, Avemco Insurance Company, A. Churchey, West Virginia Resident Agent, Carole Hartman, West Virginia Resident Agent, John Watson, AIC Managing General Agent, Thomas Offutt, AIC Assistant Vice President–Legal, Gregg A. Pike, AIC Managing General Agent, Richard Boeschen, AIC Managing General Agent, Steven M. Homenda, AIC Managing General Agent, Gene Scheil, AIC Managing General Agent, Richard Homel, AIC Managing General Agent, James Nelson, AIC Vice President and John Does I through XX as they may appear, Defendants.

No. CIV.A. 5:02CV2.

United States District Court, N.D. West Virginia.

April 4, 2003.

Frank A. Balcar, Palm Beach Shores, FL, pro se.

Harry F. Bell, Jr., William L. Bands, Bell and Bands, PLLC, Charleston, WV, for defendants.

## MEMORANDUM OPINION AND ORDER GRANTING MOTION FOR SANCTIONS AND DENYING AS MOOT MOTION TO ENLARGE TIME

STAMP, District Judge.

### I. Procedural History

On or about December 13, 2001, *pro se* plaintiff, Frank A. Balcar, filed a complaint in the Circuit Court of Ohio County, West Virginia against Bell & Associates, LLC,[1] Harry S. Bell, Jr., Esq., William L. Bands, Esq., Avemco Insurance Company, A. Churchey, West Virginia Resident Agent, Carol Hartman, West Virginia Resident Agent, John Watson, AIC Managing General Agent, Thomas Offutt, AIC Assistant Vice President–Legal, Gregg A. Pike, AIC Managing General Agent, Richard Boeschen, AIC Managing General Agent, Steven M. Homenda, AIC Managing General Agent, Gene Scheil, AIC Managing General Agent, Richard Homel, AIC Managing General Agent, James Nelson, AIC Vice President and John Does I through XX. On January 4, 2002, the case was removed to this Court. On September 4, 2002, this Court granted the defendants' motions to dismiss finding that plaintiff's claims against the defendants were barred on collateral estoppel and res judicata grounds. On October 10, 2002, the attorney defendants[2] and Avemco defendants[3] filed a motion for sanctions against the plaintiff.

---

1. This defendant's proper name is Bell & Bands, PLLC.

2. These defendants include Bell & Bands, Harry F. Bell and William L. Bands.

3. These defendants include Avemco Insurance Company, John Watson, Thomas Offutt, Greg A. Pike, Richard Boeschen, Steven M. Homenda, Gene Sheil, Richard Homel, and James Nelson.

Plaintiff was ordered to respond which he did on February 12, 2003, and the defendants then replied. For the reasons stated below, defendants' motion for sanctions is granted.

## II. *Facts*

This action arises from an incident involving a 1979 Piper 610B Aero Star aircraft, Registration No. N181X, which occurred on June 11, 1993. Damage to the aircraft occurred when the aircraft piloted by plaintiff landed "gear up" at the Ohio County, West Virginia airport. The aircraft was owned by Mr. Balcar and insured by defendant Avemco Insurance Company under a policy numbered NC–2–300083–3. The policy was in effect for a one-year period from March 3, 1993 through March 3, 1994.

Plaintiff brought an action in the Circuit Court of Ohio County which was removed to this Court as Civil Action No. 5:96CV146 (the first action) several years ago. That action was dismissed by this Court on October 11, 1996 for lack of personal jurisdiction. Dismissal was without prejudice so that plaintiff could file an action where personal jurisdiction could be obtained over the defendant.

Plaintiff then filed another action in the United States District Court for the District of Maryland, Civil Action No. WMN–98–1850 (the second action). On March 3, 1999, the District Court of Maryland dismissed the plaintiff's action on statute of limitations grounds. Plaintiff moved for reconsideration, but that motion was denied as untimely. Plaintiff then appealed that decision to the United States Court of Appeals for the Fourth Circuit. On October 14, 1999, the Fourth Circuit affirmed the District Court of Maryland's ruling.

Thereafter, on November 12, 1999, plaintiff filed a breach of contract action in the Circuit Court of Ohio County, West Virginia which was then removed to this Court as Civil Action No. 5:99CV148 (the third action). On September 21, 2000, this Court dismissed, with prejudice, plaintiff's third complaint on collateral estoppel and res judicata grounds. Plaintiff then filed a motion for reconsideration which this Court denied on November 16, 2000. Thereafter, plaintiff filed a notice of appeal and the Fourth Circuit Court of Appeals later affirmed this Court's rulings.

On December 31, 2001, plaintiff filed his fourth action in the Circuit Court of Ohio County alleging causes of action against the named defendants arising out of the loss of his 1979 Piper 601B Aerostar aircraft on June 11, 1993. It is this fourth complaint, and the motions relating thereto, that form the basis of the motion for sanctions.

## III. *Discussion*

Defendants contend that plaintiff had no valid basis for filing the fourth action since this Court expressly set forth the law of collateral estoppel and res judicata in its order dismissing the third action against defendant Avemco on those grounds. This Court also held, in the third action, that the attorney defendants had acted properly in defending the third action. Despite this Court's order dismissing the third action, plaintiff filed the fourth action when, defendants argue, plaintiff knew or should have known that he had no valid grounds for filing such action. Defendants argue that plaintiff filed the fourth action with full knowledge that he had no viable claims against the Avemco defendants or the attorney defendants. Defendants argue that plaintiff's repeated frivolous motions and other filings have forced them to incur substantial costs and fees in defending the fourth action and that sanctions are warranted in this case.

### A. *Timeliness of Motion*

 Plaintiff, in response to this Court's

*Roseboro*[4] notice, responded to the defendants' motion for sanctions, although the memorandum is unresponsive to the merits of the motion for sanctions. The response, rather, reiterates arguments made by the plaintiff throughout the course of this litigation. In his response, however, plaintiff does appear to suggest that the motion for sanctions was untimely. In their reply, defendants acknowledge that their motion is untimely pursuant to Federal Rule of Civil Procedure 54(d)(2)(B), but ask this Court to enlarge the time to file such motion for good cause and/or excusable neglect pursuant to Federal Rule of Civil Procedure 6(b).

This Court finds the defendants' motion to enlarge time unnecessary since, pursuant to Federal Rule of Civil Procedure 54(d)(2)(E), the time limitation for filing a motion for attorney's fees contained in Rule 54 does not "apply to claims for fees and expenses as sanctions for violations of these rules or under 28 U.S.C. § 1927." Accordingly, this Court finds that the motion for sanctions is timely and, therefore, the motion to enlarge time is DENIED AS MOOT.

### B. *Authority to Sanction*

This Court is uncertain under what specific authority defendants urge this Court to grant their motion for sanctions. Throughout the motion, defendants refer to this Court's "inherent power" to impose sanctions while citing cases awarding sanctions pursuant to several authorities, including 28 U.S.C. § 1927 and Federal Rule of Civil Procedure 11. Out of caution, this Court will address its authority to sanction under each of these authorities.

#### 1. *Federal Rule of Civil Procedure 11*

Defendants note in their motion that they filed a motion for sanctions on February 13, 2002 pursuant to 28 U.S.C.

§ 1651(a), 28 U.S.C. § 1927, Federal Rule of Civil Procedure 11, and common law. On April 12, 2002, however, the defendants withdrew their motion for sanctions which this Court granted in its order of September 4, 2002. Defendants state that no additional motion for sanctions was filed prior to the one presently at issue because defendants believed it more proper to file a motion seeking sanctions after dismissal of the case.

■ If defendants do seek relief pursuant to Rule 11, they are barred from such relief at this juncture. Since the 1993 amendments to Rule 11 were adopted and implemented, several courts, as well as the Fourth Circuit, have held that a motion pursuant to Rule 11 may not be brought subsequent to the conclusion of the case. This holding is a result of the "safe harbor" provision of Rule 11(c)(1)(A). That subsection of Rule 11 dictates that a motion for sanctions brought pursuant to the rule shall be served, but not filed with the Court, unless, "within 21 days after service of the motion (or such other period as the court may prescribe), the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected." Fed.R.Civ.P. 11(c)(1)(A). The advisory committee notes in regard to the 1993 amendments to the rule offer guidance as to what effect the safe harbor provision has on the timing of filing a motion for sanctions pursuant to Rule 11. "Given the 'safe harbor' provision discussed below, a party cannot delay serving its Rule 11 motion until conclusion of the case (or judicial rejection of the offending contention)." Fed.R.Civ.P. 11 Advisory Committee Notes (1993 Amendments). The Fourth Circuit concurs and has stated, "the 'safe harbor' provisions of Rule 11(c)(1)(A) preclude the serving and filing of any Rule 11 motion after conclusion of

4. *Roseboro v. Garrison,* 528 F.2d 309 (4th Cir.1975).

the case." *Hunter v. Earthgrains Co. Bakery*, 281 F.3d 144, 2002 WL 121565, *4 (4th Cir.2002).

This Court agrees that the safe harbor provision of Rule 11 dictates that a motion for sanctions pursuant to the Rule must be served prior to the conclusion of the case. In this case, defendants' motion pursuant to Rule 11 was withdrawn and no such further motion was filed with this Court prior to this Court's order entering judgment for the defendants on September 4, 2002. Therefore, any request for sanctions pursuant to Rule 11 would be untimely and must be denied.

2. *Title 28, United States Code, Section 1927*

■ Another avenue by which sanctions may be assessed against an attorney is § 1927 which reads:

Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927. "An attorney facing sanctions is entitled to notice and some opportunity to respond to the charges." *Bost v. Fox*, 122 F.3d 1060, 1997 WL 577583, *2 (4th Cir.1997) (unpublished)(citing *Roadway Express. Inc. v. Piper*, 447 U.S. 752, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980)). In *Bost*, the district court, on its own initiative, granted sanctions under 28 U.S.C. § 1927. *See id.* On appeal, the Fourth Circuit noted that it agreed with the Third Circuit's view that "due process requires notice designed to inform the respondent of what matters he must address to avoid sanctions." *Id.* at *3. The Third Circuit has held that due process is not satisfied by the mere existence of § 1927.

*See Jones v. Pittsburgh Nat'l Corp.*, 899 F.2d 1350 (3d Cir.1990). Rather, particularized notice is required. *See id.*

■ This Court agrees that § 1927 must be alleged with particularity in a motion for sanctions because "the importance of the professional and financial interest at stake and principles of due process mandate great caution before assuming that the court knows all it needs to know and the respondent has nothing to add." *Bost*, 122 F.3d 1060, 1997 WL 577583 at *3.

■ Even if defendants did expressly request that this Court impose sanctions pursuant to § 1927, it could not do so as that section applies only to attorneys. The plain language of the statute dictates this conclusion. *See* 28 U.S.C. § 1927 ("Any *attorney* or other person *admitted* to conduct cases in any court . . . .") (emphasis added).

There seems to be a split of authority as to whether or not § 1927 applies to *pro se* litigants. This Court, however, agrees with those courts that have found that § 1927 does not apply to *pro se* litigants but only to licensed attorneys. *See e.g. Sassower v. Field*, 973 F.2d 75 (2d Cir. 1992). In *Sassower*, the Second Circuit held that sanctions pursuant to § 1927 could be awarded against a *pro se* litigant who was a licensed attorney at the time of the subject litigation but not against a *pro se* litigant who was a non-lawyer. *See id.* The Second Circuit rejected the proposition that § 1927 applies to *pro se* litigants since they are granted permission to proceed *pro se*. *See id.* at 80. The court noted that the word "admitted" as contained in § 1927 "suggests application to those who, like attorneys, gain approval to appear in a lawyerlike capacity." *Id.* The court distinguishes this context from that of *pro se* litigants because "parties generally have a right to appear *pro se*." *Id.* Consequently, § 1927 does not apply to

plaintiff, and this Court could not sanction him pursuant to that statute even if defendants had raised it in their motion.

### 3. *Inherent Authority of the Court*

█ Finally, courts may sanction for bad faith conduct via their inherent authority. "The case law is well-established that district courts have the inherent power to sanction parties for certain bad faith conduct, even where there is no particular procedural rule that affirmatively invests the court with the power to sanction." *Strag v. Bd. of Tr.*, 55 F.3d 943, 955 (4th Cir.1995). The Fourth Circuit has also held that Rule 11 and § 1927 do not displace the inherent authority of the court to impose sanctions for bad faith conduct as these other methods of sanctions "are not substitutes for the inherent power, for that power is both broader and narrower than other means of imposing sanctions." *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 458 (4th Cir.1993)(quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991)). According to the Fourth Circuit, bad faith sanctions, unlike sanctions pursuant to § 1927, may be applied to counsel "as well as to litigants." *LaRouche v. Nat'l Broad. Co., Inc.*, 780 F.2d 1134, 1140 (4th Cir. 1986); *see also Roadway Express, Inc. v. Piper*, 447 U.S. 752, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980).

█ The Supreme Court, in *Chambers*, held that a court may assess attorneys' fees when a party has acted in bad faith. *Chambers*, 501 U.S. 32, 111 S.Ct. 2123. The circumstances of assessing attorneys' fees were outlined by the Supreme Court in *F.D. Rich Co., Inc. v. United States, ex rel. Indus. Lumber Co., Inc.*, 417 U.S. 116, 129, 94 S.Ct. 2157, 40 L.Ed.2d 703 (1974). Those circumstances which give rise to attorneys' fees include when a party acts in bad faith, vexatiously, wantonly, or for oppressive reasons. *See Chambers*, 501

U.S. 32, at 45–46, 111 S.Ct. 2123 (citing *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 258–59, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975); citing also *F.D. Rich Co.*, 417 U.S. at 129, 94 S.Ct. 2157). The Supreme Court noted that a court may assess attorneys' fees against a party "if a court finds 'that fraud has been practiced upon it, or that the very temple of justice has been defiled.'" *Chambers*, 501 U.S. 32 at 46, 111 S.Ct. 2123 (quoting *Universal Oil Prod. Co. v. Route Ref. Co.*, 328 U.S. 575, 580, 66 S.Ct. 1176, 90 L.Ed. 1447 (1946)).

█ This Court finds that it would be appropriate, in this case and under these circumstances, to impose sanctions against the plaintiff pursuant to this Court's inherent powers. This Court recognizes that "the threshold for the use of inherent power sanctions is high." *Matta v. May*, 118 F.3d 410, 416 (5th Cir.1997). It is only in "narrowly defined circumstances" that federal courts have an inherent power to assess attorney's fees. *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980). Because the court's inherent power to sanction should be exercised with caution and discretion, some circuits have held that clear and convincing evidence of bad faith and vexatious behavior is required for a court to exercise its inherent authority to sanction. *See, e.g., Aoude v. Mobil Oil Corp.*, 892 F.2d 1115 (1st Cir.1989); *see also Shepherd v. Am. Broad. Co., Inc.*, 62 F.3d 1469 (D.C.Cir.1995). Although the Fourth Circuit appears not to have addressed the issue, this Court believes it, too, would adopt the clear and convincing evidence standard with regard to the Court's inherent power to sanction.

This Court finds that it has been shown by clear and convincing evidence that plaintiff's conduct exemplifies such bad faith or vexatious conduct as to warrant

the imposition of sanctions against him pursuant to this Court's inherent power to sanction. Plaintiff was advised by this Court in clear and convincing terms that his claims against the defendants in the third action were without merit and were barred. Plaintiff, nonetheless, went on to file a fourth action against the defendants which the defendants were in turn forced to defend. This Court believes this case is an example of the type of vexatious and wanton conduct that justifies the imposition of sanctions.

## C. *Amount of Sanction*

■ This Court finds guidance from the Fourth Circuit in deciding how to actually go about assessing sanctions. Although in the context of sanctions imposed pursuant to Rule 11,[5] the Fourth Circuit has set forth four factors a district court should consider in assessing sanctions. *See In re Kunstler*, 914 F.2d 505, 523 (1990)(citing *White v. Gen. Motors Corp.*, 908 F.2d 675 (10th Cir.1990)). These factors include: "(1) the reasonableness of the opposing party's attorney's fees; (2) the minimum to deter; (3) the ability to pay; and (4) factors related to the Rule 11 violation." *Id.* Above all, a district court must keep in mind that "the amount of a monetary sanction should always reflect the primary purpose of deterrence" of future litigation abuse. *Id.* at 522–23.

■ First, the court should consider the reasonableness of the fees requested. In this case, defendants request $15,000.00 in legal fees and costs. As discussed below, this Court finds that plaintiff should be sanctioned in an amount which more sufficiently satisfies the primary objective of deterrence and, therefore, it is unnecessary to address the reasonableness of defendants' request.[6]

Second, the court should sanction in an amount which is the minimum necessary to deter the abusive litigation practices. *See id.* at 524. It is important to keep in mind that the goal "is not to chill the bringing of facially valid lawsuits" but, rather, to prevent the kinds of abuses undertaken in the suit at issue. *See id.* In this case, this Court finds that a sanction in an amount significantly less than that requested by the defendants serves the purpose of deterring future improper litigation tactics.

Third, the court should consider the offender's ability to pay. *See Kunstler*, 914 F.2d at 523. In doing so, "the burden is upon the parties being sanctioned to come forward with evidence of their financial status." *Id.* at 524. "[T]he smaller the amount of the monetary sanction imposed, the greater the likelihood that a court's consideration of the ability to pay will not want for lack of the formal submission of evidence on a sanctioned party's financial status." *Id.* In this case, plaintiff was put on notice, by order of this Court, that defendants had filed a motion for sanctions and he was ordered to respond to the motion. Plaintiff did so but did not address the merits of the motion, nor did he contest the fees requested by defendants. Neither did plaintiff assert an inability to pay such fees. This Court finds that the amount of sanctions it chooses to impose

---

**5.** Despite the fact that this Court is unaware of a case in which the Fourth Circuit has applied these factors to a case wherein the district court assessed sanctions pursuant to its inherent authority, and even though such an analysis may be unnecessary, this Court, out of an abundance of caution, finds it prudent to apply these factors in the context of this case.

**6.** This Court does not, however, by making this statement, wish to suggest that the fees requested by defendants are unreasonable, nor does it doubt that the figure offered by defendants is reflective of the amount expended by defendants in defending the fourth action.

upon plaintiff is not significant enough to warrant further evidence from plaintiff that he is unable to pay. Plaintiff has had no trouble affording the costs of filing four cases, filing many motions in each case and appealing several of the cases. Thus, this Court finds that plaintiff is able to pay the sanctions imposed by this Court as set forth below.

Finally, the court should consider factors "such as the offending party's history, experience, and ability, the severity of the violation, the degree to which malice or bad faith contributed to the violation, the risk of chilling the type of litigation involved, and other factors as deemed appropriate in individual circumstances." *Id.* at 524–25. In this case, as stated above, plaintiff has a long history of filing suits against these and other defendants which all arise out of the same transaction or occurrence. Plaintiff has been advised by this Court, as well as at least one other court, that his claims are without merit or that they are procedurally barred. Despite these court orders, plaintiff has continued to file actions against these defendants and this Court has been forced to address, on multiple occasions, plaintiff's claims. This Court recognizes that plaintiff has appeared *pro se* and should not be held to the standards of an attorney admitted to practice law. However, plaintiff's conduct throughout the course of the litigation leaves this Court with no alternative than to sanction him with the hope that such sanctions will deter him from engaging in future abusive and repetitive litigation which has been fully resolved by this Court.

For these reasons, plaintiff is sanctioned in the amount of *Two Thousand Dollars ($2,000.00)*. Plaintiff is ORDERED to pay this amount, by check or money order made payable to:

"Bell & Bands PLLC"

individually and as counsel for all moving defendants, within *thirty days* from the entry of this order. Such check or money order shall be sent to:

Bell & Bands PLLC

30 Capitol Street

P.O. Box 1723

Charleston, West Virginia 25326.

Defendants also ask this Court to enjoin plaintiff from filing actions in state court. This request is DENIED. In its September 4, 2002 order, this Court granted defendants such relief in this Court by ordering that any future filings by plaintiff must be reviewed by a magistrate judge to determine the viability of such filings before service upon the defendants. This Court, however, finds it inappropriate to grant such relief in actions filed in state court but, rather, will defer to the discretion of such courts to handle such matters when or if they arise.

### IV. *Conclusion*

For the reasons stated above, defendants' motion for sanctions pursuant to this Court's inherent powers is hereby GRANTED. Defendants' motion to enlarge time is hereby DENIED AS MOOT.

Plaintiff, who is proceeding *pro se,* is ADVISED that he has the right to appeal the judgment of this Court to the Fourth Circuit Court of Appeals. Notice of such appeal must be filed with the Clerk of this Court within thirty days after the date of the entry of this order.

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit copies of this order to plaintiff and to counsel of record herein. Pursuant to Federal Rule of Civil Procedure 58, the

Clerk is DIRECTED to enter judgment on this matter.